No. 16,636.

SALTER *v.* BOARD OF COMMISSIONERS OF
JEFFERSON COUNTY ET AL.
(246 P. [2d] 890)

Decided June 26, 1952.

Mr. B. F. REED, Mr. JOSEPH E. MAKER, for plaintiff in error.

Mr. WM. HEDGES ROBINSON, JR., for defendant in error Board of Commissioners.

Messrs. GORSUCH & KIRGIS, for defendant in error Fair Association.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

IN this review issues are not involved other than as they pertain to the matter of a default judgment and a

finding of contempt, which was the result of the failure of plaintiff in error, one of the defendants in the trial court, to appear and give his deposition. A motion to set aside the default and judgment was filed in apt time and overruled, and plaintiff in error brings the cause here by writ of error. Defendants in error will be referred to as county commissioners and the Fair Association. Plaintiff in error was one of the defendants in the trial court and will be designated herein as defendant or Salter.

The county commissioners filed this action as "a claim for possession of real property" on May 19, 1947 against Salter and Sky Ranches Society, Inc., alleging that defendants were wrongfully withholding possession from the county commissioners and an ouster was prayed for.

Each of the defendants filed a separate answer, denying that plaintiffs, county commissioners, were owners of the land in question, and were entitled to possession; admitting that defendants were in possession, and denying that their possession was wrong or illegal. For a further answer and defense, each of the defendants alleged that the county commissioners did, on July 19, 1943, grant defendant Salter a lease on said lands, together with an option to purchase; that defendant Salter complied with the terms of said lease and option and exercised his right to purchase in accordance with the provisions of the option and had subsequently assigned and transferred his interest in said lands to Sky Ranches Society, Inc. Each of the defendants alleged that a demand for the specific performance of the option agreement had been made, and the refusal, failure and neglect of plaintiffs to comply therewith; a copy of the lease and option agreement was made a part of the answer of each defendant.

Thereafter, in April of 1949, the Fair Association sought to intervene and permission was granted. The substance of the petition in intervention was that the intervener had, by arrangement with the county commissioners, used and had been promised the use of the

real estate involved, as a fairground and that it had erected buildings on the ground of the value of $10,000, which were erected with defendants' knowledge and without objection, or claim by either of defendants of any interest in the property; that it had brought certain personal property of the value of $500 onto the premises, which had been converted by defendant Salter to his use; that the improvements had been damaged through the negligence of the defendants to the extent of $2000; that defendants had refused the removal of said buildings and improvements; and that by reason thereof the Fair Association was compelled to hold its county fair on other premises at an expense of approximately $4000.

The lease and option under which defendant Salter was in possession was dated July 19, 1943, from the county of Jefferson, State of Colorado, through its board of county commissioners, lessor, to Salter, as lessee. The lands involved are a part of the subdivision known as Roxbury Gardens, Jefferson county, and are particularly described therein by metes and bounds. The term of the lease was five years, ending at noon on the first day of August, 1948, for a total rental of $1000; $400 representing the first and last year's rental, was paid upon the execution of the lease and $200 on the first of August 1944, 1945 and 1946. The lessee was given the right and option to purchase a certain described portion of the premises leased, at any time during the life of the lease, and prior to any forfeiture thereunder, for the purchase price of $100 an acre; that upon the exercise of said option, the lessor was to make proper conveyance.

Shortly after the filing of the answer, the county commissioners submitted interrogatories to defendant Salter, which he answered under oath. Just prior to October of 1949, arrangements were made by plaintiffs, county commissioners and the Fair Association, to take defendant Salter's deposition. On appearance in court on notice to take the deposition, defendant Salter objected to the participation in the deposition of the county commissioners,

since they had exercised their right of discovery by the use of interrogatories under the rules of civil procedure. The court fixed a time and place for the taking of the deposition at a later date and in its order stated that plaintiff, county commissioners, could not participate in the deposition, and that order still stands of record. However, in the meantime, and prior to May of 1950, several attempts to procure Salter's deposition were had and usually postponed to a later date, due generally to the illness of Salter. We will not detail the various incidents relative to these postponements and continuances other than to say that counsel for plaintiffs contend that all of the delay was occasioned by Salter; and we find that, without any reason appearing of record, Salter had several changes of counsel appearing for him, which in and of itself would occasion some delay; however, all of these facts are of little consequence in determining the questions before us now.

Finally a notice was given Salter and his then counsel, Richeson, for the taking of Salter's deposition on May 3, 1950 before the trial court. Without the details, it is admitted that Salter received the notice through the mail and that service was made by leaving certain papers with his wife; that notice was duly given Richeson, Salter's counsel. A few days prior to the date set, Salter was under the care of Dr. Grant W. Herman, who, while Salter was in his office, telephoned the trial court of Salter's condition and advised that Salter was not able, without danger to his health, to appear for the taking of the deposition; the trial court told him that the procedure for postponement would be expected to be followed; thereupon Dr. Herman issued his certificate, which was delivered by Salter to Richeson, his counsel, who filed the certificate about May 1, prior to the date set for the taking of the deposition. It further appears that Richeson being in communication with Salter, advised him that he would appear and present the doctor's certificate and procure a postponement, and assured Salter that it

was not necessary for him to appear under the circumstances.. As best we can ascertain from the confused record, the hour fixed by the notice was nine o'clock A. M. Counsel for plaintiffs, including the county commissioners, who appeared regardless of the standing order that they were not to participate, appeared on time and the absence of defendant Salter being noted, and the trial court determining that the failure of Salter to appear was willful, suggested to counsel that a motion would be entertained to strike all of Salter's pleadings and enter a default against him. Both plaintiffs joined in such motion; a default was entered on the motion; and judgment entered in favor of plaintiff for possession and an ouster of defendant Salter; money judgment entered against him on the damages; and in addition thereto, the trial court found Salter to be in contempt and so adjudged. Within the hour, and shortly before ten o'clock A. M., Richeson, Salter's counsel, appeared, inadvertently believing the hour for appearance was ten o'clock instead of nine, and thereupon found that the default and judgment, heretofore indicated, had already been entered. Findings and decree were prepared by counsel for plaintiffs and entered upon the default after the taking of some testimony on May 8, 1950. Richeson was permitted to withdraw as counsel for Salter, and counsel now appearing for Salter entered their appearance and on June 14, 1950, filed their motion to set aside the default judgment, which motion was supported by the affidavits of defendant Salter, his counsel Richeson, and Dr. Herman. This motion was heard on August 11, 1950 and the transcript shows the exhibits offered by defendant Salter at the hearing. This motion was overruled, except the trial court set aside the money judgment for one purpose only, to wit, that defendant Salter be permitted to introduce evidence on the question of the amount of said judgment.

It would require a studied effort to present a record of more confusion than that which confronts us. This is

due in part to the manner in which certain matters in the progress of the litigation was handled by the various attorneys who participated. It is more or less a "taken for granted" kind of procedure. Oral stipulations were the basis for important hearings and later the contents of such motion appear only from the statements of different attorneys acting more or less in the capacity of witnesses; many of the pleadings and other papers filed, fail to show a filing date; and the entire record is replete with irregularities. The judgment and decree here presented for review was obtained ex parte, without notice, and some of the findings of fact are unsupported by any evidence.

Summarized, Salter's contentions on this review are to the general effect that the findings, judgment and decree of the trial court are void, and were entered in violation of the express provisions of our rules of civil procedure; and beyond that, that the court abused its discretion in denying defendant's motion to set aside the judgment. This is a civil action, and, of course, subject to the rules of civil procedure. The rules here involved, and which were clearly violated, are:

Rule 37 (d) "If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or wilfully fails to serve answers to interrogatories submitted under Rule 33, after proper service of such interrogatories, *the court on motion and notice* may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."

Rule 37 (b) (1) "If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the court in which the action is pending, the refusal may be considered a contempt of that court."

Rule 55 C (2) "In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, guardian ad litem, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought *has appeared in the action,* he (or, if appearing by representative), his representative *shall be served with written notice* of the application for judgment *at least 3 days prior to the hearing on such application.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper."

Rule 7 C (1) "An application to the court for an order shall be by motion which, unless made during a hearing or trial, *shall be made in writing,* shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion, or in a written notice of application to set the same for hearing."

It appears from the record that numerous motions and applications for orders were not in writing, contrary to the mandatory provision of Rule 7 C (1) above quoted.

We now eliminate any further reference to any of the proceedings leading up to May 3 and May 8, 1950, the date the default, judgment on the default, and the finding of contempt was entered by the court. There is no contention by defendants in error that Salter or his counsel had any notice whatsoever of the application for default; nor were they, or either of them given the three-day notice required under Rule 55, which in this case is

particularly applicable because defendant Salter had appeared in the action, his answer being on file. However, the trial court, without sufficient evidence or showing, found that he wilfully failed to appear for the taking of his deposition and then suggested to counsel for both plaintiffs that motion be made to strike all of Salter's pleadings and that default be entered. The trial court undoubtedly was acting under Rule 37 (d); nevertheless, the vital part of the rule was overlooked or heedlessly violated, because the rule requires that before this action can be taken, it is on *"motion and notice."* We venture the statement that nothing in the record even begins to support the court's finding that Salter had wilfully failed to appear. Any determination to that end had to arise as a creature of the court's mind, maybe from aggravation and augmented by the clamor of counsel for plaintiffs, one of whom had no right to appear in the taking of the deposition or any proceedings relative thereto, except in violation of the standing order of the court. This order definitely prohibited the county commissioners from participating in the proceedings to take the deposition and even though erroneous, it still was an unmodified order and not vacated.

The already glaring error of the trial court was climaxed by its finding Salter to be in contempt. There is no contention that Salter refused to be sworn, or that he refused to answer any question after being directed to do so by the court, which provides the only circumstance from which contempt of court would lie. The only provision for contempt is to be found under Rule 37 (b) (1) hereinbefore set out, and the only provision for striking the pleadings and default judgment is found in Rule 37 (d) above quoted. For the purposes of this review, this rule is narrowed to two propositions and they are: First, that Salter wilfully failed to appear; second, that he received no notice as provided by the rule.

■ To our astonishment, we find that this "penalty"

judgment was awarded plaintiff and we assume the plaintiff to whom reference is made, is the county commissioners, without a single word of proof to show the right of possession or the ownership to be in plaintiff; this in face of the complaint and both answers which specifically showed defendant to be in possession, and the answer specifically claiming the right of possession, all of which is yet to be litigated. In addition to giving plaintiff possession of the lands, a money judgment for all that plaintiff claimed was awarded. No doubt judgment by default may be entered against a party who wilfully fails to appear in response to a proper notice to have his deposition taken under the rule. That is the penalty. However, before that penalty is imposed there must be given an opportunity to show cause for nonappearance; also, contempt is not a penalty that goes along with default judgment. As aught appears from the record, it would be impossible for the court to know that defendant wilfully failed to appear in response to notice. Such drastic determination must rest on something more than surmise.

In the face of such noncompliance with the applicable rules of civil procedure, the default judgment and all of the proceedings that followed, as well as the order of contempt, are wholly void, and in fact any motion that barely disclosed these void features of the judgment should be sufficient to have the judgment set aside; however, in this case, a full and complete motion or application to that end, supported by three convincing affidavits, was filed; the court erroneously denied the motion, and we are compelled, under all the facts, gathered from a confused record, to reverse the ruling on a matter that should never have been here in the first place. For these reasons, the judgment is reversed and the cause remanded with directions to proceed in an orderly fashion under the rules and let the case be determined on the issues made by the pleadings.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE STONE concur in the result.

MR. JUSTICE ALTER and MR. JUSTICE MOORE not participating.