KWIK WAY STORES, INC., a Colorado
corporation, Petitioner,

v.

Donna CALDWELL and James
Waits, Respondents.

No. 85SC281.

Supreme Court of Colorado,
En Banc.

Nov. 16, 1987.

Goodbar & Johnson, David M. Johnson, Colorado Springs, for petitioner.

Alan Jensen, Colorado Springs, for respondents.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Kwik Way Stores, Inc. v. Caldwell*, 709 P.2d 36 (Colo. App.1985), which reversed a default judgment in favor of the petitioner-plaintiff, Kwik Way Stores, Inc. (Kwik Way), as a result of the failure of the respondents-defendants, Donna Caldwell and James Waits, to appear for their depositions after having been duly served with a deposition-subpoena, and remanded the case to the trial court for further proceedings. We reverse in part, affirm in part, and remand the case for further proceedings.

## I.

In December 1982, Kwik Way, the owner and operator of several convenience stores, filed separate suits against Donna Caldwell and James Waits in the District Court of El Paso County. Kwik Way sought actual and punitive damages for libel and slander, outrageous conduct, and interference with business and contractual relations, and also requested an order permanently enjoining Caldwell and Waits from similar conduct in the future. Kwik Way's claims were based on the alleged conduct of Caldwell and Waits during former litigation in the United States District Court. In the federal litigation, Caldwell, who is a former employee of Kwik Way, sued Kwik Way for allegedly violating the Fair Labor Standards Act. The United States Department of Labor subsequently entered that litigation on behalf of all former and present Kwik Way employees. The federal litigation proceeded as a class action and was ultimately settled by a consent judgment for unpaid overtime in favor of approximately sixty current and former Kwik Way employees.[1]

Kwik Way's complaint against Caldwell and Waits in the El Paso County District Court alleged that during the course of the federal litigation they defamed Kwik Way by statements, newspaper advertisements, and letters, that Caldwell and Waits solicited other Kwik Way employees to initiate additional and unjustified litigation against Kwik Way, that Caldwell and Waits harassed Kwik Way's former and present employees, and that Caldwell and Waits interfered with Kwik Way's business relationship with its employees and customers. Caldwell and Waits were not represented by counsel during the earlier phase of the case and did not file answers to the complaint.

As part of pretrial discovery, Kwik Way subpoenaed Caldwell and Waits for their depositions. When Caldwell and Waits failed to appear, Kwik Way filed a motion for default pursuant to C.R.C.P. 37(d). At the default hearing, Waits advised the court that he failed to appear for the deposition because his attorney, who had not yet entered the case, told him that he (Waits) was under no obligation to appear if he had not been personally served with the subpoena. The trial court, noting that two affidavits on file showed personal service of the subpoenas on Caldwell and Waits, entered a default, ruling as follows:

> Mr. Waits, the rules require that if you are a party to an action—and you are a party in this case—that you appear at depositions. And if you fail to cooperate in these matters, that then your pleading can be stricken. That's what the court is going to do. I'm going to strike your pleadings. This is not something that you can go to and decide you do want to appear or you don't.
>
> \*    \*    \*    \*    \*    \*
>
> The court's going to strike the pleadings of the defendants and their default will be entered under Rule 37 for failure to comply with the discovery. And we'll set the matter down for default hearing.

---

1. Although the federal litigation was settled favorably to Kwik Way employees, Caldwell elected not to settle and pursued her claim independently. Waits was not a Kwik Way employee, but took an active part in assisting Caldwell in the federal litigation.

The trial court then informed Caldwell and Waits that the default would be set aside if they were able to produce testimony from the lawyer that he advised him in a manner consistent with Waits' prior statement to the court. The court set the case for a hearing on damages.

At the damages hearing Caldwell and Waits were represented by counsel. The trial court advised defense counsel that his role at the hearing would be as follows:

> [Y]our function in this hearing will be to observe the proceedings and advise your clients as to what is going on and not to interpose objections or to present arguments; because they stand in default, and they stand in a position of being without any pleadings. So it would be inappropriate for this matter to be transformed into a trial.

Kwik Way presented its evidence on damages,[2] but the court refused to permit counsel for Caldwell and Waits to present evidence on their behalf, to object to evidence presented by Kwik Way, or to cross-examine witnesses called by Kwik Way. The court awarded Kwik Way $25,000 in actual damages and $25,000 in punitive damages on its claim for defamation and interference with business relations. It also permanently enjoined Caldwell and Waits from contacting Kwik Way employees without court consent and from making any libelous statements about Kwik Way's alleged violation of state or federal wage-and-hour regulations.

Caldwell and Waits appealed from the judgment. The court of appeals reversed the judgment for two reasons: (1) the trial court erred in entering a default without a specific finding that Caldwell and Waits *willfully* failed to attend the deposition; and (2) the trial court did not permit Caldwell and Waits to cross-examine Kwik Way's witnesses at the damages hearing or present evidence in mitigation of damages. In remanding the case to the trial court for further proceedings, the court of appeals held that if the trial court on remand enters a default, it must permit Caldwell and Waits to participate fully in the damages hearing. We granted certiorari to review both aspects of the court of appeals' decision.

## II.

We first address whether the court of appeals correctly held that a party's failure to comply with discovery obligations must be willful before a default can be entered against the noncomplying party. The present version of C.R.C.P. 37(d) provides as follows:

> *If a party* or an officer, director, or managing agent of a party, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party *fails: (1) To appear before the officer who is to take his deposition, after being served with a proper notice;* or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories; or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, *the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subsection (b)(2) of this Rule.*[3]

---

2. Kwik Way's evidence on damages included the following: testimony of the company president and the chairman of the board about direct costs incurred in the legal action and the decrease in gross profits as a result of the demoralizing effect of defendants' letters, advertisements, and telephone calls; testimony that several employees of the Colorado Division of Labor refuted defendants' repeated allegations of criminal activity on the part of Kwik Way; testimony from Kwik Way's accountant that a $285,000 decline in profits had occurred over the three-year period ending in September 1983 even though profits and productivity should have increased during that period, and that defendants' letters and personal contacts had adversely affected employees' attitudes and performances; and testimony from an economist that the 22 Kwik Way stores had achieved profits of $89,161 lower than projected during the years that defendants were circulating letters to Kwik Way's employees.

3. In addition, C.R.C.P. 37(d) authorizes the following:

> In lieu of any order or in addition thereto, the court shall require the party failing to act or

(Emphasis added). C.R.C.P. 37(b)(2) authorizes the court in which the action is pending to "make such orders in regard to the failure as are just, and among others the following:"

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) *An order* striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or *rendering a judgment by default against the disobedient party.* [4]

(Emphasis added).

■ We conclude that, contrary to the ruling of the court of appeals, it is not necessary that a party's failure to appear for a deposition be willful in order for a trial court to enter a default or other sanction under C.R.C.P. 37(d). Rather, we hold that, while willfulness is one factor to consider, a trial court may impose the sanction of default under C.R.C.P. 37(d) when a party's failure to appear for a deposition was the result of bad faith or fault amounting at least to gross negligence.

## A.

Prior to 1970, C.R.C.P. 37(d), 1 C.R.S. (1963), provided as follows:

the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

**4.** Subparagraph (D) of C.R.C.P. 37(b)(2) authorizes the court to issue the following order:

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

*If a party* or an officer or managing agent of a party *wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice,* or wilfully fails to serve answers to interrogatories submitted under rule 33, after proper service of such interrogatories, *the court on motion and notice may* strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or *enter a judgment by default against that party.*

(Emphasis added).

The Colorado rule was a substantially verbatim counterpart of the then existing Fed. R.Civ.P. 37(d).[5]

Under the pre–1970 rule, the sanction of default was limited to those situations in which a party's failure to appear for a deposition was willful. *See, e.g., Manning v. Manning,* 136 Colo. 380, 317 P.2d 329 (1957) (showing of willful failure to appear for deposition essential to sanction of dismissal); *Salter v. Board of County Comm'rs,* 126 Colo. 39, 246 P.2d 890 (1952), *aff'd,* 130 Colo. 504, 277 P.2d 232 (1954) (showing of willful failure to appear for deposition necessary for order of default as sanction). In considering the pre–1970 version of Fed.R.Civ.P. 37(d), the United States Supreme Court in *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), indicated that while a party's inability to comply with a discovery order will not support the dismissal of that party's complaint as a sanction, factors other than willfulness, such as bad faith and fault, could properly be considered in applying sanctions under the rule.[6]

**5.** The only difference between the pre–1970 versions of C.R.C.P. 37(d) and Fed.R.Civ.P. 37(d) is that the Colorado rule repeats the word "wilfully" before the second part of the rule dealing with failure to serve answers to interrogatories, while the federal rule does not.

**6.** In *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958), the Court stated:

Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established

Amendments to Fed.R.Civ.P. 37(d) in 1970 eliminated the express requirement of willfulness while broadening the scope of permissible sanctions. The changes were intended to allow greater flexibility to the trial court by providing an array of sanctions commensurate with the degree of culpability associated with a party's noncompliance with the discovery process. *See Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery*, 48 F.R.D. 487, 541 (1970); 4A Moore's Federal Practice ¶ 37.05 (2d ed. 1987). The advisory committee's explanatory note on the amendment to the federal rule states:

> The resulting flexibility as to sanctions eliminates any need to retain the requirement that the failure to appear or respond be "wilful." The concept of "wilful failure" is at best subtle and difficult, and the cases do not supply a bright line. Many courts have imposed sanctions without referring to wilfullness. In addition, in view of the possibility of light sanctions, even a negligent failure should come within Rule 37(d).... "Wilfullness" continues to play a role, along with various other factors, in the choice of sanctions.

48 F.R.D. at 541–42 (citations omitted). Acknowledging the interceding 1970 amendments to the rule, the Supreme Court expressly reaffirmed *Societe Inter-nationale*'s triple criteria of willfulness, bad faith, and fault in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (per curiam).[7]

### B.

C.R.C.P. 37(d) was amended in 1970 to conform to the 1970 amendments to Fed.R. Civ.P. 37(d). Since we have not had occasion to construe the present version of C.R. C.P. 37(d), we may appropriately look to the federal interpretation of the federal rule in attempting to establish standards for the imposition of the sanction of a default judgment under C.R.C.P. 37(d). *See Faris v. Rothenberg*, 648 P.2d 1089, 1091 n. 1 (Colo.1982); *Sandefer v. District Court*, 635 P.2d 547, 549–50 (Colo.1981), *overruled on other grounds sub nom., Sager v. District Court*, 698 P.2d 250 (Colo.1985).

Notwithstanding the 1970 amendment dispensing with the willfulness requirement, there still exists considerable diversity of opinion with respect to Fed.R.Civ.P. 37(d). Some federal courts have continued to require a finding of willfulness before a litigation-ending sanction is affirmed. *See, e.g., Flaks v. Koegel*, 504 F.2d 702 (2d Cir.1974); *see generally* Epstein, *et al., An Up–Date on Rule 37 Sanctions After National Hockey League v. Metropolitan Hockey Club, Inc.*, 84 F.R.D. 145 (1979).[8]

that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.

7. In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam), the Court remarked that "[w]hile there have been amendments to ... Rule [37] since the decision in *Rogers*, neither the parties, the District Court, nor the Court of Appeals suggested that the changes would affect the teachings of the quoted language [*i.e.*, dismissal authorized when noncompliance with discovery obligations is due to willfulness, bad faith or fault] from that decision." *Id.* at 640, 96 S.Ct. at 2779. The Court then went on to hold that the sanction of dismissal pursuant to Rule 37 was not an abuse of a trial judge's discretion where the party's failure to comply with a discovery rule demonstrated " 'flagrant bad faith' and ... 'callous disregard' of their responsibilities." *Id.* at 643, 96 S.Ct. at 2781.

While both *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), and *National Hockey League* were cases involving a party's failure to comply after an order issued by the trial court compelling discovery, the general principle of those cases has been extended by the federal appellate courts to encompass those situations in which the party fails to respond to a request for discovery by an opposing party, and the opposing party thereafter moves for dismissal or for an entry of default judgment under Rule 37(d). *E.g., Sigliano v. Mendoza*, 642 F.2d 309 (9th Cir.1981); *G–K Properties v. Redevelopment Agency*, 577 F.2d 645 (9th Cir.1978).

8. Consistent with its ruling in this case, the Colorado Court of Appeals on at least one prior occasion construed the present version of C.R.C. P. 37(d) as requiring a finding of willfulness before a default judgment could properly be entered as a sanction. *Petrini v. Sidwell*, 38 Colo.App. 454, 558 P.2d 447 (1976).

Other courts have relied on the "triple criteria" of *Societe Internationale*—willfulness, bad faith or fault—when reviewing whether the trial court abused its discretion in imposing sanctions under Rule 37. *See, e.g., Gordon v. Idaho*, 778 F.2d 1397 (9th Cir.1985); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir.1979); *In re Attorney General of United States*, 596 F.2d 58 (2d Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). One commentator has stated that "[t]he final word still seems to be that a marked disregard of the discovery process is the usual standard for a judicial finding that the conduct of the litigant was willful." Epstein, *et al., An Up–Date on Rule 37 Sanctions After National Hockey League v. Metropolitan Hockey Club, Inc.*, 84 F.R.D. at 146.

In our view, "willfulness" implies a deliberate or intentional disobedience of the discovery rules or the lawful orders of the court. "Bad faith," on the other hand, connotes conduct which, although not necessarily deliberate or intentional, nonetheless amounts to a flagrant disregard or dereliction of one's discovery obligations. The degree of "fault" justifying the severe sanction of a default judgment would seem to contemplate conduct which, even when not performed willfully or in bad faith, is nonetheless greater than mere inadvertence or simple negligence—that is, gross negligence. *Cine Forty–Second Street Theatre Corp.*, 602 F.2d at 1067.

■ In view of the fact that sanctions authorized in C.R.C.P. 37(b)(2) range over a wide area—*e.g.*, an order staying the proceedings until the discovery order is obeyed, an order designating facts as established, an order prohibiting the disobedient party from establishing a claim or defense, the entry of a default judgment against the disobedient party—a court should exercise an informed discretion in imposing a sanction which is commensurate with the seriousness of the disobedient party's conduct.

Although C.R.C.P. 37 offers little guidance to a trial court in selecting one sanction over others, *see* Note, *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions*, 91 Harv.L.Rev. 1033, 1037–38 (1978), we believe the rule should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party. The presence or absence of culpable conduct, therefore, should remain an important consideration in the imposition of a litigation-ending sanction such as a default judgment. *See* Note, *Federal Rules of Civil Procedure: Defining a Feasible Culpability Threshold for the Imposition of Severe Discovery Sanctions*, 65 Minn.L. Rev. 137, 143 (1980). Thus, while simple negligence might be sufficient for the imposition of a lesser sanction, we do not believe that it should justify the drastic sanction of default, thereby terminating the litigation at the discovery phase without regard to the merits of the case. *See, e.g., Manning v. Manning*, 136 Colo. 380, 317 P.2d 329; *Reserve Life Ins. Co. v. District Court*, 126 Colo. 217, 247 P.2d 903 (1952); *Salter v. Board of County Comm'rs*, 126 Colo. 39, 246 P.2d 890, *aff'd*, 130 Colo. 504, 277 P.2d 232.

We emphasize, however, that we reject the view that the sanction of default can only be entered when there is a finding of *willfulness* on the part of the noncomplying party. Requiring a finding of willfulness as a condition precedent to default would vitiate much of the discretion which C.R.C.P. 37(d) intended to repose in the trial court for abuse or disregard of the discovery process. Where a party does not deliberately or intentionally disobey the discovery rules but nonetheless engages in a course of conduct that manifests a flagrant disregard of discovery obligations or constitutes a substantial deviation from reasonable care in complying with discovery obligations, a court may properly impose the sanction of default.

■ Since the issue on appeal of a C.R.C.P. 37(d) default judgment is whether the trial court abused its discretion, *see, e.g., National Hockey League*, 427 U.S. at

642, 96 S.Ct. at 2780; *Freeland v. Fife*, 151 Colo. 339, 344, 377 P.2d 942, 944 (1963), the sanction of default should be based on findings that permit meaningful appellate review of the trial court's action. In view of the discretion which C.R.C.P. 37 vests in trial courts to choose from a broad range of sanctions, it is incumbent on the trial court to set out the factual and legal bases for the imposition of a sanction, specifying, for example, that the disobedient party failed to comply with a motion to compel or failed to appear for a deposition, and also to explicate on the record why it chose the particular sanction imposed.[9] When a trial court, as here, elects to impose the drastic sanction of default under C.R.C.P. 37(d), it should first make a specific finding of willful disobedience of the discovery rules, bad faith consisting of a flagrant disregard of a party's discovery obligations, or culpable fault consisting of at least gross negligence in failing to comply with those obligations.

### C.

Applying these principles to the case before us, the record here does not contain the specific finding that the behavior of Caldwell and Waits met the requisite level of culpability for the sanction of a judgment by default. Although there is some evidence in the record to support a finding that their conduct might have amounted to more than simple negligence, there is also evidence from which might have been drawn a contrary inference. The record falls far short of the requisite findings on the factual and discretionary bases for the severe sanction of a default judgment. Since the trial court made no findings at all nor gave any indication of what standard it was applying, the record does not permit us to determine whether a default sanction would be appropriate under the proper legal standard.

We accordingly reverse that part of the court of appeals' judgment which requires a finding of willfulness, and we direct that the case be returned to the trial court for further proceedings on the appropriate sanction to be imposed under C.R.C.P. 37(d).

### III.

We now turn to the procedures to be followed at the damages hearing subsequent to the entry of a default. The court of appeals in this case determined that the defaulting party, if present at the hearing, must be allowed to cross-examine witnesses and present affirmative evidence in mitigation of damages. We agree with the court of appeals' resolution of this aspect of the case.

### A.

When a trial court determines that entry of default judgment is the appropriate sanction, the default establishes liability, *see Bettcher v. State ex rel. Colorado General Hospital*, 140 Colo. 428, 431, 344 P.2d 969, 971 (1959), but does not fix the amount of damages, *see, e.g., Pope v. United States*, 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944); *Adel v. Parkhurst*, 681 P.2d 886, 892 (Wyo.1984); *see generally* 6 Moore's Federal Practice ¶ 55.07, at 55–43 (2d ed. 1987); 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2688, at 450 (2d ed. 1983). Rule 55(b)(2) of the Colorado Rules of Civil Procedure provides, in pertinent part:

> If, in order to enable the court to enter judgment [by default] or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may con-

**9.** As a practical matter, we note that a sufficient level of culpability for default generally will be present in cases where an order compelling discovery was entered and the party failed to comply. The order itself promotes certainty by effectively alerting a party whose initial failure to comply with discovery was merely negligent, *see* Note, *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions*, 91 Harv.L.Rev. 1033, 1050 (1978), and subsequent noncompliance would be nothing short of gross negligence.

duct such hearings or order such references as it deems necessary and proper.[10] This language places broad discretion in the hands of the trial judge and must be interpreted in light of the overriding principle that the rules of civil procedure be construed to secure the just determination of every action. C.R.C.P. 1(a).

■ We have interpreted C.R.C.P. 55(b)(2) as requiring the trial court to take evidence if further information is needed to determine damages. *Valdez v. Sams,* 134 Colo. 488, 491, 307 P.2d 189, 191 (1957). A hearing is unnecessary only in an action for a liquidated amount or a sum calculable by mathematical processes alone. *See, e.g., Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983); *United Artists Corp. v. Freeman,* 605 F.2d 854 (5th Cir.1979); *Eisler v. Stritzler,* 535 F.2d 148, 153–54 (1st Cir.1976). However, the rule does not state, nor have we considered, the extent of a defaulting party's procedural rights at the hearing on the damage issue.

The conclusion reached by the court of appeals in this case is in accord with those courts that have addressed the issue. *See, e.g., Kohlenberger, Inc. v. Tyson's Foods, Inc.,* 256 Ark. 584, 510 S.W.2d 555 (1974); *Dungan v. Superior Court,* 20 Ariz.App. 289, 512 P.2d 52 (1973); *Gallegos v. Franklin,* 89 N.M. 118, 547 P.2d 1160 (Ct.App.), *cert. denied,* 89 N.M. 206, 549 P.2d 284 (1976); *Rainwater v. Haddox,* 544 S.W.2d 729 (Tex.Civ.App.1976); *see generally,* Annot., *Defaulting Defendant's Right to Notice and Hearing as to Determination of Amount of Damages,* 15 A.L.R.3d 586 (1967). The determination that the hearing on damages cannot be a one-sided presentation by the prevailing party has its underpinnings in the fundamental principles of the adversary system. *E.g. Dungan v. Superior Court,* 512 P.2d at 53. An evidentiary hearing in which both parties participate is more likely to result in a proper judgment based on competent and sufficient evidence.

### B.

■ In the present case, Kwik Way sought an award of unliquidated compensatory and punitive damages. During the damages hearing the trial court permitted opening and closing statements by defense counsel, but the trial court refused to allow objections, presentation of evidence, or cross-examination of plaintiff's witnesses. Conceptualizing the hearing as a non-adversarial procedure, with defense counsel cast in the role of an observer, is not consistent with the intent or spirit of C.R.C.P. 55(b)(2) in a hearing regarding unliquidated damages. We therefore affirm that portion of the judgment of the court of appeals which holds that, if a default judgment should be entered on remand, the trial court must allow the defendants the opportunity to participate fully in the damages hearing.

### IV.

In summary, we reverse that part of the judgment which requires willfulness as a precondition to the entry of default judgment under C.R.C.P. 37(d). We affirm that part of the judgment requiring that in the event a default judgment is entered on remand, the trial court must permit the defaulted party to cross-examine witnesses and to present mitigating evidence on unliquidated damages at the damages hearing subsequent to the entry of a default. The case is accordingly remanded to the court of appeals with directions to return the case to the trial court for further proceedings consistent with the views herein expressed.

---

**10.** *See also* C.R.C.P. 121, Section 1–14, which specifies the requirements for the entry of a default judgment. The moving party must supply, *inter alia,* an affidavit establishing the amount of damages and interest for which judgment is sought.