23CA0700 Harrison v Barclay 09-05-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0700 Morgan County District Court No. 20CV30062 Honorable Robert C. James, Judge Elizabeth Harrison, Plaintiff-Appellant and Cross-Appellee, v. Peyton Barclay, Defendant-Appellee and Cross-Appellant. JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS Division VI Opinion by JUDGE FREYRE Lipinsky and Schutz, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced September 5, 2024 Bachus & Schanker, LLC, Corey A. Holton, Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee Hall Booth Smith, P.C., Elizabeth C. Moran, Jeremy J. Balu, Greenwood Village, Colorado, for Defendant-Appellee and Cross-Appellant 
1 ¶ 1 Plaintiff, Elizabeth Harrison, appeals the trial court’s judgment awarding her $13,452.10 in damages against defendant, Peyton Barclay. We affirm in part, reverse in part, and remand for a new trial. I. Background ¶ 2 On July 23, 2019, Barclay turned the wrong way down a one-way street and collided with Harrison’s vehicle. ¶ 3 Although Harrison declined medical treatment at the scene, she went to an emergency room, where her right foot was x-rayed. She was discharged and returned home. The next day, Harrison returned to the emergency room, complaining of neck and upper back pain, headaches, nausea, dizziness, and confusion. ¶ 4 On July 26, 2019, Harrison saw her primary care physician, Dr. Donald Kruglet. Dr. Kruglet diagnosed Harrison with muscle spasms in the neck and shoulder. He recommended physical therapy. At a follow-up appointment on August 14, Harrison told Dr. Kruglet that her neck was better but that she still had occasional headaches. Dr. Kruglet recommended that Harrison 
2 continue with physical therapy and return if her pain did not subside. Harrison attended two physical therapy sessions. ¶ 5 In September 2019, Harrison sought a second opinion from Dr. Alicia Feldman. Dr. Feldman referred Harrison to ProActive Chiropractic and Active Integrated Medicine (ProActive) for neck pain. On her intake form at ProActive, Harrison reported neck and back pain. Similarly, on a pictorial diagram, she depicted pain in her neck and right shoulder. On the intake form, Harrison also noted a previous lower back injury unrelated to the car accident. ¶ 6 On September 25, Allison Kennedy, a ProActive nurse practitioner, treated Harrison. Kennedy provided trigger point injections to Harrison’s cervical spine, neck, and shoulder. On October 4, Harrison saw Dr. Leif Stephens, a chiropractor at ProActive, who diagnosed her with subluxations of her cervical spine and pelvis. Dr. Stephens did not note any complaints of lower back pain. Then, on October 11, Harrison saw Dr. Jared Gruhl, another chiropractor at ProActive. Dr. Gruhl’s records did not note any lower back pain. Nevertheless, Dr. Gruhl performed dry needling on Harrison’s lower back and pelvic muscles. 
3 ¶ 7 On October 15, Harrison saw Dr. Gruhl and Dr. Stephens. Again, neither physician noted any lower back pain or diagnosis in their records. Nevertheless, Dr. Stephens performed a full-body adjustment. ¶ 8 On October 17 and 18, Harrison again saw Kennedy and Dr. Stephens. For the first time, she complained of “sharp, stabbing, burning” lower back pain radiating to her abdomen. Dr. Stephens performed another full-body adjustment and ordered x-rays of Harrison’s lumbar spine. After reviewing the x-rays, Dr. Stephens ordered an MRI of Harrison’s lower back. Ultimately, Kennedy noted Harrison suffered from lumbago, lower back pain, and sciatica. ¶ 9 On April 27, 2020, Harrison asked Dr. Kruglet for a referral to an orthopedic surgeon for the pain in her neck, back, lower back, and right buttocks; her headaches; and the numbness in her right leg. 
4 ¶ 10 Harrison filed her complaint on September 24, 2020, alleging that Barclay was negligent in causing the accident.
1 Harrison claimed injuries to her left foot, left knee, lower back, and right neck and sought economic, noneconomic, physical impairment, and disfigurement damages. ¶ 11 Harrison continued to receive treatment for her lower back issues. Eventually, Harrison was referred for pain management. On August 6, 2021, she saw Louis C. Seagar, M.D. Dr. Seagar identified pain levels in Harrison’s lower spine through a technique called proactive discography. Dr. Seagar also reviewed Harrison’s medical records and prepared a report for trial. Harrison designated him as an expert, and the court qualified him at trial as an expert in pain management and anesthesiology, with a specialty in interventional pain management and spinal diagnostics. Dr. Seagar opined that Harrison’s lower back pain resulted from the car accident. 1 Harrison’s complaint is not in the appellate record, so we take judicial notice of her amended complaint in the district court file. See Walker v. Van Laningham, 148 P.3d 397, 397-98 (Colo. App. 2006). 
5 ¶ 12 In contrast, Dr. Lloyd Westin Mobley III, who was qualified as an expert in neurosurgery, testified for the defense. After reviewing Harrison’s medical records, Dr. Mobley opined that Harrison’s lower back pain was not caused by the car accident but instead was caused by the chiropractic care she received at ProActive. ¶ 13 Barclay admitted negligence for causing the accident, but she contested the extent of Harrison’s injuries and the cause of her lower back pain. Approximately one year before the trial and over Harrison’s objection, the court granted Barclay’s motion to designate ProActive as a nonparty at fault and, later, at trial, instructed the jury accordingly. ¶ 14 A jury found that Harrison was injured in the car accident and that Barclay and ProActive were the causes of Harrison’s injuries, damages, and losses. The jury awarded Harrison $75,000 in noneconomic damages and $47,291.79 in economic damages. The jury apportioned 11% fault to Barclay and 89% fault to ProActive. The trial court then reduced the jury award based on the jury’s allocation of fault to ProActive and entered final judgment against Barclay in the amount of $13,452.10. 
6 ¶ 15 Harrison contends that the trial court erred by (1) striking her request for future damages as a sanction for her repeated discovery violations and by not reconsidering its ruling; (2) allowing Barclay to designate ProActive as a nonparty at fault; and (3) incorrectly instructing the jury regarding the original tortfeasor rule. We disagree with her first contention and discern no abuse of discretion in the court’s imposition of the sanction or its ruling denying reconsideration. Thus, we affirm this portion of the judgment. ¶ 16 However, we agree that the trial court legally erred by granting Barclay’s motion to designate ProActive as a nonparty at fault because the designation failed to comply with the statute’s third factor. Accordingly, we reverse the judgment and remand the case for a new trial. Because we are reversing the judgment, we need not address Harrison’s remaining contentions. II. Claim for Future Damages ¶ 17 Harrison contends that the trial court abused its discretion by striking her request for future damages and by declining to reconsider its ruling. We are not persuaded. 
7 A. Additional Facts ¶ 18 On December 3, 2021, six weeks before the original trial date, Barclay requested discovery sanctions or, in the alternative, a continuance of the trial because Harrison disclosed Dr. Kruglet’s medical records late, despite having downloaded them a month earlier. Barclay argued that the late disclosure rendered her unable to determine the extent of Harrison’s injuries, including the fact that Harrison made no complaints about lower back pain to Dr. Kruglet between July and August 2019. This new information, she argued, required her expert to issue a supplemental opinion that could not be completed before trial. Additionally, Barclay argued that Harrison still had not produced (1) records from a workplace fall and related worker’s compensation claim that occurred after the car accident; (2) magnetic resonance imaging (MRI) records of her cervical and lumbar spine; and (3) commercial trucking educational licensure and employment records.
2 ¶ 19 The trial court granted Barclay’s motion to continue the trial, but it did not impose further sanctions on Harrison. The court 2 Harrison was a commercially licensed truck driver. 
8 ordered Harrison to produce records of all of her MRIs from July 11, 2011, to the present; Dr. Kruglet’s medical records from 2015; and Nationwide’s worker’s compensation claim file. It then set a disclosure deadline of January 31, 2022. The court also ordered the parties to confer regarding any further discovery difficulties and to file a joint status report in February 2022 outlining any remaining discovery issues and whether further court intervention was necessary. The trial court warned Harrison that her failure to meet her future disclosure obligations would result in sanctions. ¶ 20 The parties’ February joint status report, signed by counsel, stated that all disclosures, with the exception of Nationwide’s workers’ compensation file, had been provided. In April 2022, the court continued the trial for reasons unrelated to the disclosure issues and reset the trial for September 6, 2022. ¶ 21 On July 15, Harrison disclosed, for the first time, that Dr. Steven Kraljic, a neurosurgeon in North Dakota, evaluated her in September 2021, and provided a one-page report. At a pretrial hearing on July 18, Harrison disclosed nine more pages of Dr. Kraljic’s report. Barclay argued that this late disclosure prejudiced 
9 her because it required her expert, Dr. Mobley, to review the newly disclosed documents and to issue an updated written opinion. Moreover, Barclay noted that Harrison had never communicated at previous conferences any difficulties in obtaining these records, and she requested that the court dismiss all of Harrison’s claims as a sanction. Harrison responded that Barclay had been on notice of Dr. Kraljic because, in Harrison’s deposition, she said a doctor in North Dakota had treated her. And Harrison conceded that she originally requested Dr. Kraljic’s records in September 2021. ¶ 22 The court sanctioned Harrison’s counsel by ordering counsel to pay Barclay’s fees and costs incurred from July 18 forward relating to fact and expert discovery, as well as fees and costs incurred in any motions practice reasonably related to her untimely disclosure of Dr. Kraljic and his records. The court further ordered counsel to confirm by August 1 that all of Harrison’s treating providers had been disclosed and that all their medical records had been produced. The court also extended Barclay’s discovery deadline related to Dr. Kraljic’s treatment to August 30. 
10 ¶ 23 On July 29, Harrison produced Dr. Kraljic’s records, along with a new set of records identifying additional providers, including Luke Roller, M.D. Dr. Kraljic’s records included a reference to Dr. Roller’s review of an MRI of Harrison’s lumbar spine. ¶ 24 On August 15, Barclay submitted a renewed motion to dismiss Harrison’s complaint or, in the alternative, to strike plaintiff’s request for future damages. Barclay argued that Harrison’s counsel had failed to disclose the MRI images requested at the December 2021 hearing and had untimely disclosed Dr. Kraljic and Dr. Roller. She further argued that she was prejudiced because the untimely disclosures, particularly the MRIs, denied her an adequate opportunity to defend against Harrison’s requests for future damages, specifically the damages related to Harrison’s lower back pain. ¶ 25 In a thorough written order, the trial court granted the motion in part and struck Harrison’s request for future damages. It first noted that counsel admitted the January 2021 MRI was “not on her radar” and that she never requested it before the court’s January 31, 2022, deadline. The court found, “There simply is no excuse for 
11 failing to provide, yet again, relevant medical records or imaging after the Court already held a hearing for the exact same issue nine months ago and issued very specific orders regarding the regulation of discovery in this case.” ¶ 26 The court noted counsel’s failures to adequately explain why she • signed a joint discovery statement indicating there were no outstanding issues except for the workers’ compensation file, when subsequent events revealed that not to be true; • failed to confer or contact the defense to explain the multitude of issues that kept arising from her failed attempts to obtain medical records; • failed to follow-up with her client to ensure that all provider information was accounted for; and • failed to request any extension of the discovery deadlines to keep the court apprised of the discovery issues that were cropping up. 
12 ¶ 27 The trial court then found that the untimely disclosures prejudiced Barclay in multiple ways. It found that Barclay’s expert, Dr. Mobley, could not render an opinion because he had never seen the recent MRIs, and it refused to speculate that he could do so by simply reading a written summary of them. The court also found that defense counsel was left with limited time to depose Dr. Kraljic and Dr. Roller, whose records tended to support Barclay’s position in the case, and that merely barring their testimony would reward counsel’s bad actions. The court noted it had previously attempted to cure the discovery violations with continuances and specific discovery orders, to no avail. It then denied Barclay’s request to dismiss all claims, but it dismissed Harrison’s request for future damages. ¶ 28 On September 1, Barclay informed the court that she was still missing MRI images of Harrison’s lower back from January 2021 and July 2022 and asked the court to strike any claim and damages related to Harrison’s lower back pain. When the court refused to do so, Barclay requested a continuance and said her counsel needed more time to receive the MRIs and to depose Dr. 
13 Roller. Barclay also informed the court that one of her attorneys had tested positive for COVID-19. Harrison did not object to continuing the trial for that reason. Without objection, the court continued the trial and extended the deadline for disclosure of the MRIs and Dr. Roller’s deposition. ¶ 29 Harrison then filed a motion to reconsider and to set aside the order striking her request for future damages. She asserted that Barclay had suffered no harm from the late disclosures because the court cured any harm through the continuance and extended discovery deadline. She noted that the court had chosen one of the severest sanctions possible and urged it to consider lesser sanctions. The court denied the motion. B. Standard of Review and Controlling Law ¶ 30 We review the trial court’s sanctions for discovery violations for an abuse of discretion. Pinkstaff v. Black & Decker (U.S.) Inc., 211 P.3d 698, 702 (Colo. 2009). A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. Sch. Dist. No. 12 v. Sec. Life of Denver Ins. Co., 185 P.3d 781, 787 (Colo. 2008). 
14 ¶ 31 Sanctions under C.R.C.P. 37 “should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party.” Pinkstaff, 211 P.3d at 702 (quoting Kwik Way Stores, Inc. v. Caldwell, 745 P.2d 672, 677 (Colo. 1987)). The court “must craft an appropriate sanction by considering the complete range of sanctions and weighing the sanction in light of the full record in the case.” Id. (quoting Nagy v. Dist. Ct., 762 P.2d 158, 161 (Colo. 1988)). Courts should “impose the least severe sanction that will ensure there is full compliance with a court’s discovery orders and is commensurate with the prejudice caused to the opposing party.” Id. ¶ 32 Trial courts have broad discretion in imposing sanctions for noncompliance. Id. However, this discretion is not unlimited. People v. Lee, 18 P.3d 192, 196 (Colo. 2001). ¶ 33 A party’s mandatory disclosures under C.R.C.P. 26(a)(1) are broad, are self-executing, and require disclosure of information “whether or not supportive of the disclosing party’s claims or defenses.” 
15 C. Analysis ¶ 34 We conclude, for three reasons, that the trial court did not abuse its discretion by striking Harrison’s request for future damages. First, Harrison’s counsel’s failure to comply with the original disclosure deadlines necessitated a continuance of the first trial setting — a lesser sanction than dismissal of all Harrison’s claims that Barclay had requested for the violation. To ensure future compliance, the trial court entered a specific discovery order that required the parties to complete discovery by January 31, 2022; to confer; and to submit a status report in February confirming compliance and the lack of outstanding discovery issues. ¶ 35 Second, despite the court’s specific discovery order, the status report counsel submitted in February stated that the only outstanding item was production of Nationwide’s workers’ compensation file — a statement the record reveals was not true. Harrison’s counsel never advised Barclay, and omitted from the status report, that six days before the discovery deadline, she had requested MRIs that were taken a year earlier. Further, Harrison’s 
16 counsel never informed Barclay’s counsel of the existence of these images, the professionals who reviewed them, or any difficulties in obtaining them in direct contravention of the trial court’s discovery order. ¶ 36 Third, this omitted information did not come to light until five months later (and less than two months before the September trial date), when Harrison’s counsel revealed that Dr. Kraljic and Dr. Roller had treated Harrison and ordered MRIs. But at this point, Barclay could not take further depositions until the end of August, which impacted the September trial date. Moreover, counsel also disclosed that Harrison had another MRI scan in July 2022 that had not yet been provided. ¶ 37 Given the record of counsel’s repeated discovery violations, lack of candor to the court and opposing counsel, and Harrison’s appellate counsel’s
3 concession in the opening brief that it was “at least arguably” within the trial court’s discretion to strike Harrison’s request for future damages, we conclude that dismissing the request for future damages was appropriate under C.R.C.P. 37 and 3 Trial and appellate counsel are not the same individual. 
17 that it effectuated proportionality between the sanction and the misconduct. See Kwik Way Stores, 745 P.2d at 677. Accordingly, we discern no abuse of discretion in the trial court’s decision to dismiss Harrison’s request for future damages. See Pinkstaff, 211 P.3d at 702. ¶ 38 We further conclude that the trial court did not abuse its discretion by denying Harrison’s motion for reconsideration. She claims that the continuance of the trial “ameliorated” the reasons the court struck her request for future damages and the resulting prejudice to Barclay. For the first time on appeal, Harrison argues that the trial would have been continued despite the nondisclosures due to Barclay’s co-counsel’s COVID-19 infection. Even assuming, without deciding, that we may consider co-counsel’s illness, we are not persuaded because the court’s decision to strike the request for future damages constituted the culmination of a series of progressive sanctions for Harrison’s counsel’s continued disregard of the court’s orders. The continuance of the September trial constituted yet another sanction for additional discovery violations that did not cure the prejudice to Barclay. Moreover, nothing in the 
18 record supports Harrison’s assertion on appeal that co-counsel’s COVID-19 illness would have necessitated a continuance of the September trial date or that co-counsel could not have proceeded to trial absent the recent discovery violations. ¶ 39 We are not persuaded otherwise by Harrison’s reliance on Todd v. Bear Valley Village Apartments, 980 P.2d 973 (Colo. 1999). In Todd, the supreme court recognized that failure to meet a discovery deadline is harmless to the other party when the trial is continued for reasons independent of discovery matters. Id. at 980. But as previously stated, the trial was continued because of Harrison’s failure to comply with discovery disclosures, not Barclay’s co-counsel’s illness. ¶ 40 Accordingly, we discern no abuse of discretion and affirm the court’s dismissal of Harrison’s request for future damages. III. Nonparty Designation ¶ 41 Harrison next contends that the trial court erroneously allowed Barclay to designate ProActive as a nonparty at fault. We agree. 
19 A. Additional Facts ¶ 42 Barclay filed a designation of nonparties at fault that she later amended. In her amended designation, Barclay argued that, before receiving treatment at ProActive, Harrison did not complain of lower back pain. As evidence, Barclay provided Harrison’s deposition, in which Harrison stated that the chiropractic care she received not only did not help her pain but made it worse: Q: Did your overall condition improve with chiropractic care? A: No. It worsened. Q: Tell me about that a little bit. A: When I went in for the adjustment on my neck, they did a full body adjustment. And once they started pressing on areas and doing their adjustment, I immediately had like really severe pain, and I told them about it. And Proactive Chiropractic — or chiropractors don’t automatically do MRIs. So they immediately put me up to do an appointment for an MRI because of the pain that the adjustment contributed to my back, and then that’s when I got the MRI. ¶ 43 The amended designation further stated: To the extent Plaintiff Harrison’s treating providers with Proactive Chiropractic caused an injury to Plaintiff Harrison’s lower back, and/or exacerbated the pain associated with a 
20 condition and/or injury in Plaintiff Harrison’s lower back that pre-dated the Accident, Proactive Chiropractic’s negligence may be partially or wholly responsible for the existence of Plaintiff Harrison’s physical conditions and/or injuries in her lower back, which Plaintiff Harrison alleges resulted in damages for which she now seeks recovery against Defendant Peyton Barclay. ¶ 44 Barclay also included the pictorial pain diagrams on which Harrison indicated right side neck and shoulder pain up to the time she received a full-body adjustment. These diagrams illustrated that her lower back pain manifested for the first time after the adjustment. ¶ 45 The final paragraph of the amended designation confirmed that Barclay was contemporaneously filing a certificate of review under sections 13-20-602 and 13-21-111.5(3), C.R.S. 2024,
4 in which Dr. Mobley opined that the designation of ProActive as a nonparty at fault did not lack substantial justification. ¶ 46 Harrison objected to Barclay’s amended designation and argued that Dr. Mobley had not set forth facts or opinions that would support a prima facie case that ProActive was negligent. On 4 The statutes have not changed, so we refer to the current versions. 
21 appeal, Harrison argues that the designation failed to connect the alleged facts with the established elements of negligence. B. Standard of Review and Controlling Law ¶ 47 We review de novo whether a defendant’s nonparty designation complied with the requirements of section 13-21-111.5(3)(b). Section 13-21-111.5 provides that a defendant may designate a nonparty who is wholly or partially at fault for the injury claimed by the plaintiff. ¶ 48 The statute provides: Negligence or fault of a nonparty may be considered if the . . . defending party gives notice that a nonparty was wholly or partially at fault within ninety days following commencement of the action . . . . The notice shall be given by filing a pleading in the action designating such nonparty . . . , together with a brief statement of the basis for believing such nonparty to be at fault. . . . If the designated nonparty is a licensed health-care professional and the defendant designating such nonparty alleges professional negligence by such nonparty, the requirements and procedures of section 13-20-602 shall apply. § 13-21-111.5(3)(b). ¶ 49 As relevant here, to satisfy the statutory requirements, a defendant must submit a brief statement of the nonparty’s fault, 
22 and because a chiropractor is a licensed health care professional, a certificate of review under section 13-20-602. ¶ 50 In pertinent part, section 13-20-602 provides: (1)(a) In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff’s or complainant’s attorney shall file with the court a certificate of review . . . . . . . . (3)(a) A certificate of review shall be executed by the attorney for the plaintiff or complainant declaring: (I) That the attorney has consulted a person who has expertise in the area of the alleged negligent conduct; and (II) That the professional . . . has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim, counterclaim, or cross claim does not lack substantial justification . . . . ¶ 51 In providing a brief statement of the nonparty’s fault, the designating party need not prove the nonparty’s fault, but the statement must “go beyond bald allegation.” Redden v. SCI Colo. Funeral Servs. Inc., 38 P.3d 75, 81 (Colo. 2001). The designating 
23 party must “allege the basis for believing . . . the non-party’s acts or omissions would satisfy all the elements of a negligence claim” by “connect[ing] alleged facts with the established elements of negligence,” which include a legal duty of care, breach of that duty, injury, and causation of the injury. Id.; see also Lopez v. Trujillo, 2016 COA 53, ¶ 9, aff’d, 2017 CO 79. C. Analysis ¶ 52 We conclude that Barclay’s amended designation of nonparties at fault did not connect the alleged facts with the elements of negligence because it failed to set forth a standard of care for chiropractors or a breach of that standard by Proactive and, thus, was deficient as a matter of law. ¶ 53 In Redden, the Colorado supreme court addressed the statutory requirements associated with designating a professional nonparty at fault in tort litigation. Redden, the plaintiff, was in a car accident with an employee of SCI Funeral Services and filed a personal injury claim against SCI. 38 P.3d at 78. SCI later filed a designation identifying Redden’s chiropractor as a nonparty at fault under section 13-21-111.5(3)(b). Id. The designation said that 
24 Redden’s treating physician could not rule out the chiropractor’s treatment as the cause of Redden’s carotid artery tear and blood clots. Id. SCI filed an accompanying certificate of review, in which a professional opined that the designation did not lack substantial justification under section 13-17-102(4), C.R.S. 2024. Id. at 79. ¶ 54 The court focused its analysis on the sufficiency of the brief statement of the basis for the nonparty’s fault. Id. at 80. The court held that a simple statement supporting only causation did not satisfy the statutory requirement of an allegation of fault or negligence. Id. It reasoned that the statute should be construed strictly to avoid attributing liability to a party from whom the plaintiff could not recover. Id. ¶ 55 Moreover, the supreme court noted that professionals are judged according to the field in which they practice and that a successful claimant must demonstrate that the professional’s conduct “fell below the standard of care appropriate to the profession.” Id. at 81. Thus, “courts require claimants, as part of a professional negligence claim, to establish the appropriate standard of care.” Id. It then held that, to satisfy the statute’s third element, 
25 “a party must allege the basis for believing the non-party legally liable to the extent the non-party’s acts or omissions would satisfy all the elements of a negligence claim. A designation that alleges only causation is insufficient as a matter of law . . . .” Id. at 81 (footnote omitted). ¶ 56 As in Redden, Barclay’s amended designation established causation by showing that Harrison did not report back pain until after she sought care at ProActive, but it never established the standard of care for chiropractors or that ProActive beached that standard. Indeed, Barclay’s designation makes no reference to a chiropractic standard of care, and Barclay provided no information indicating that, within the chiropractic profession, it was improper to treat Harrison’s lower back before she was diagnosed with lower back pain. ¶ 57 Moreover, Barclay never explained how Dr. Mobley, a neurosurgeon, could opine on the chiropractic standard of care. Indeed, physicians who practice a medical specialty possess a higher degree of skill than a general practitioner and thus, are held to a higher standard of care within that specialty. Hall v. Frankel, 
26 190 P.3d 852, 858 (Colo. App. 2008). Therefore, a medical professional who does not practice within a specialty may not opine about the standard of care applicable to that specialty “unless the expert demonstrates a substantial familiarity with the other specialty and a similarity between the standards of care in the two fields.” Id. Because Barclay’s amended designation failed to establish a standard of care for chiropractors or a breach of that standard, we conclude that it was insufficient as a matter of law and that the trial court erred by allowing Barclay to designate ProActive as a nonparty at fault. ¶ 58 Finally, to the extent Harrison argues that trial evidence can “cure” deficiencies in a designation, we disagree. She cites no authority to support this argument, and we conclude that such a proposition would defeat the purpose of the rule requiring nonparty designations before trial. ¶ 59 Accordingly, we reverse the judgment and remand the case for a new trial. 
27 IV. Disposition ¶ 60 The judgment is affirmed in part, reversed in part, and the case is remanded for a new trial. JUDGE LIPINSKY and JUDGE SCHUTZ concur.