In re Marcia PINKSTAFF, Plaintiff

v.

BLACK & DECKER (U.S.) INC., and
Baldwin Hardware Corporation,
Defendants.

No. 09SA19.

Supreme Court of Colorado,
En Banc.

June 29, 2009.

Kazazian & Associates, LLC, Nina H. Kazazian, Denver, Colorado, Attorneys for Plaintiff.

Holland & Hart LLP, Steven M. Gutierrez, Denver, Colorado, Wheeler Trigg Kennedy LLP, Carolyn Fairless, Denver, Colorado, Attorneys for Defendants.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, Attorneys for Judge Peterson.

Justice MARTINEZ delivered the opinion of the court.

In this C.A.R. 21 proceeding, the Colorado Supreme Court held the trial court abused its discretion in striking an answer brief as a sanction for discovery violations. The court held that striking an answer brief is tantamount to an entry of default judgment, and, in the present case, was unduly harsh and not commensurate with the harm done. The court also held that, although the trial court employed language in an order appearing to hold Baldwin and Black & Decker's attorney in contempt of court, because the trial court states it was not its intent to hold the attorney in contempt, the attorney was not held in contempt of court and was therefore not denied due process.

## I. Introduction

We issued a rule to show cause pursuant to C.A.R. 21 in this original proceeding to determine whether the trial court abused its discretion in striking the answer of Defendant–Petitioners Black & Decker U.S., Inc. ("Black & Decker") and Baldwin Hardware Corporation ("Baldwin") in this acrimonious case marked by a difficult discovery process.

Because we hold that striking an answer brief is tantamount to an entry of default judgment, and is not the least severe sanction commensurate with the harm done, we hold the trial court abused its discretion in striking the answer.

We also find that, while the trial court employed language in an order appearing to hold Baldwin and Black & Decker's attorney in contempt of court, because the trial court states it was not its intent to hold the attorney in contempt, the attorney was not held in contempt of court and was therefore not denied due process.

Accordingly, we make our rule absolute, reverse the trial court's order striking the answer, and remand this case to the trial court for further proceedings consistent with this opinion.

## II.  Facts

Plaintiff–Respondent Marcia Pinkstaff initiated the present lawsuit in 2008 to recover approximately $23,000 in wages she claims Defendant–Petitioners owe her under the terms of a bonus plan.  In the complaint, Pinkstaff asserted that she was employed by Baldwin and Black & Decker and, under the terms of the bonus plan, Baldwin and Black & Decker improperly calculated her yearly bonus.  Baldwin and Black & Decker answered the complaint, admitting that Pinkstaff was an employee of Baldwin, but denying that she was employed by Black & Decker.  They also denied that Pinkstaff was owed additional compensation by either Baldwin or Black & Decker.  They additionally asserted various affirmative defenses, including waiver, estoppel, laches, ratification, consent, acquiescence, lack of consideration, justifiable reliance, breach of contract, and failure to fulfill a necessary condition.[1]

Discovery disputes commenced almost immediately after the case was at issue.  Pinkstaff submitted her initial disclosures pursuant to C.R.C.P. 26(a) on April 29, 2008.  Thereafter, Baldwin and Black & Decker submitted initial and amended disclosures in which they listed seventeen persons with

knowledge of discoverable information. Pinkstaff then submitted a motion for disputed modified case management order in which she asserted that Defendant–Petitioners refused to conduct informal discovery or allow her to interview any of the seventeen individuals with discoverable information.  Accordingly, Pinkstaff asked the trial court to permit her to depose all seventeen individuals. The parties contested the number of witnesses over whom Baldwin and Black & Decker had control and the number of depositions Pinkstaff could conduct.

On August 1, 2008, the trial court held a case management conference at which it denied the request for seventeen depositions, calling the request "ridiculous."  At the conference, the parties discussed the legal relationship between Black & Decker and Baldwin, and the trial court expressed frustration with both parties stating "I think you guys are making a mountain out of a molehill. . . . Both of you sit down.  This is ridiculous. You ought to be embarrassed that you are here.  This is a simple, straightforward case."  The trial court ordered Baldwin and Black & Decker to provide information concerning Baldwin's financial status and its relationship to Black & Decker.  After a lengthy debate about the individuals Pinkstaff could contact directly, the trial court requested one of Defendant–Petitioners' attorneys, Steven Gutierrez, to "comply with the letter and spirit of [his] professional responsibilities."  The court also ordered Gutierrez to "produce a genuine and legitimate [C.R.C.P.] 30(b)(6) witness list."

On August 6, 2008, Pinkstaff filed a motion to compel discovery alleging continuing violations of discovery protocol.  Black & Decker and Baldwin responded, admitting some errors in their disclosures and again arguing that Black & Decker was not a proper defendant.  In an effort to resolve the discovery disputes, the court held a hearing on September 10, 2008.  At the hearing, the court expressed concern about "client control," and ordered representatives of Black & Decker

---

1.  The parties filed amended pleadings the following month containing similar allegations and responses.

and Baldwin to appear at "every further hearing so they can see what some of the issues are." The court also ordered corporate counsel for Black & Decker to appear at the next hearing in order to assess "either what problem he's causing, or what problems local counsel—meaning both sides—are causing." In response, Gutierrez stated "To the extent you find my conduct has violated the Professional Rules, I would accept sanctions by you[ ] or the professional bar."

Following the hearing, the trial court issued a written order. Among other things, the order required a second deposition of a representative of Baldwin, a deposition of a representative of Black & Decker, that the depositions be scheduled by September 30, 2008, that Baldwin and Black & Decker produce organizational charts, that Baldwin and Black & Decker produce "other non-privileged documents," and that Gutierrez and Pinkstaff's counsel, Nina Kazazian, not contact one another.

On September 16, Pinkstaff filed a motion to enforce the court's September 10 order. The motion requested sanctions against Baldwin and Black & Decker pursuant to C.R.C.P. 37, specifically asking that the court enter an order striking Baldwin and Black & Decker's answer and affirmative defenses, "precluding them from presenting any evidence in support of their defenses or in opposition to plaintiff's claims." Additionally, Pinkstaff requested an award of attorneys' fees and costs incurred in bringing the motion to compel and in conjunction with the yet-to-be conducted depositions.

At a hearing on September 26, 2008, representatives of Baldwin and Black & Decker did not appear. However, they did appear at subsequent hearings.[2] Depositions of representatives of Baldwin and Black & Decker did not occur by the court ordered date of September 30; however, On October 14 and October 26, respectively, representatives of Baldwin and Black & Decker were deposed. Several days before the depositions, Defen-

dant–Petitioners produced organizational charts for Baldwin, The Black & Decker Corporation (a non-party), and verified that Black & Decker does not maintain organizational charts separate from those produced for The Black & Decker Corporation. Black & Decker and Baldwin also produced a number of additional documents prior to the depositions. However, the parties dispute whether these documents constituted the "other non-privileged documents" the trial court ordered Black & Decker and Baldwin to produce.

Discovery disputes continued throughout much of October, November, and early December of 2008. On December 19, the trial court granted Pinkstaff's September 16 motion to enforce the court's September 10 order. Basing the decision on the "willful disobedience" of court orders by Defendant–Petitioners and lead counsel Gutierrez, the trial court struck Defendant–Petitioners' answer and affirmative defenses to the amended complaint and required that Baldwin, Black & Decker, and Gutierrez pay Pinkstaff's attorneys' fees and costs. The order stated:

> Defendants were strongly cautioned by the Court in status hearings and the Court struggled with counsel's dysfunction endemic to this case. Nevertheless, Defendants proceeded to violate the Court's Order by failing to provide the discovery responsive to Plaintiff's requests. In fact, Defendants acknowledged in repeated hearings their potential exposure to sanction and evidences a certain resignation to their likely imposition. It almost seemed to this Court that Mr. Gutierrez was daring it to take such action. He evidences a passive/aggressive behavior and a defiant attitude that this Court has never experienced.

However, the court did not point to specific discoverable items that had not been disclosed or any particular portions of the court's September 10 order which had not been complied with.

---

2. On September 19, Defendant–Petitioners filed a motion to reconsider the court's order requiring representatives of Baldwin and Black & Decker to travel to Colorado for status hearings. The trial court denied the motion and, on Sep-

tember 29, Defendant–Petitioners filed a petition pursuant to C.A.R. 21 to this court challenging the trial court's denial of the motion to reconsider. We denied the petition.

Regarding the court's decision to impose the sanction of striking the answer rather than monetary sanctions, the court stated that, as Defendant–Petitioners are "multi-million dollar companies," a lesser punishment of monetary sanctions would be "insignificant" and have no "deterrent effect."

Finally, the court stated that, as lead counsel for Defendant–Petitioners, Gutierrez is "charged with the responsibility to ensure the Defendants comply with the Court's orders and the rules of civil procedure." The court found that Gutierrez's "delay[,] ... willful failure to comply with the September 10 order ... and lack of cooperation with counsel ... has effectively stopped this case in its procedural tracks." Therefore, the court stated "such flagrant violations of the Court's Order and Rules merits a finding that Defendants' counsel are also in contempt of Court."

On January 20, 2009, the trial court ruled on the remaining pending motions and denied Baldwin and Black & Decker's motion to reconsider the court's January 10 order. This C.A.R. 21 petition followed. Defendant–Petitioners argue they substantially complied with the trial court's orders and attempted to provide appropriate responses to what they viewed as overbroad discovery requests in a simple contract action. They assert that the trial court's order striking their answer and affirmative defenses leaves them without any defense to Pinkstaff's claims, and the severity of this sanction is not justified in the present case. Baldwin and Black & Decker also contend the district court found Gutierrez in contempt of court without affording him the due process rights to which he is entitled. Defendant–Petitioners do not contest the imposition of attorneys' fees. We issued a rule to show cause on January 22.

The trial court responded to our rule to show cause, arguing that striking Baldwin and Black & Decker's answer was a proper sanction given the discovery violations that occurred. The court also asserts it did not hold Gutierrez in contempt. Rather, the court argues the language in its December 10 order stating that Gutierrez's "flagrant violations of the Court's Order and Rules merits a

finding that Defendants' counsel are also in contempt of court" was merely a statement that the court believed it had grounds upon which to hold Gutierrez in contempt, although it chose not to do so.

## III. Analysis

### A. Sanctions

■ C.R.C.P. 37 provides a variety of sanctions trial courts may impose on parties failing to make disclosures or cooperate in discovery. The available sanctions include orders requiring payment of attorneys' fees and costs, orders staying proceedings until discovery orders are complied with, orders prohibiting a disobedient party from introducing designated matters into evidence, orders striking pleadings, and orders entering default judgment.

■ Generally, sanctions under C.R.C.P. 37 "should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party." *Kwik Way Stores, Inc. v. Caldwell,* 745 P.2d 672, 677 (Colo.1987). If Rule 37 sanctions are warranted in a case, "the trial judge must craft an appropriate sanction by considering the complete range of sanctions and weighing the sanction in light of the full record in the case." *Nagy v. Dist. Court,* 762 P.2d 158, 161 (Colo.1988). When discovery abuses are alleged, courts should carefully examine whether there is any basis for the allegation and, if sanctions are warranted, impose the least severe sanction that will ensure there is full compliance with a court's discovery orders and is commensurate with the prejudice caused to the opposing party. *In re People v. Lee,* 18 P.3d 192, 197 (Colo.2001).

■ We review a trial court's imposition of sanctions under C.R.C.P. 37 for abuse of discretion. *Kwik Way,* 745 P.2d at 677. A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *School Dist. No. 12 v. Security Life of Denver Ins. Co.,* 185 P.3d 781, 787 (Colo. 2008).

■ Although trial courts "have broad discretion in imposing sanctions for non-com-

pliance with rules, that discretion is not without limits." *Beeghly v. Mack*, 20 P.3d 610, 614 (Colo.2001); *Lee*, 18 P.3d at 196. If the trial court's actions in imposing sanctions "substantially tip the balance in an effort to avoid prejudice and delay and thereby unreasonably deny a party his day in court, the reviewing court must overturn the decision of the trial court." *J.P. v. Dist. Court In and For 2nd Judicial Dist. of Denver*, 873 P.2d 745, 751 (Colo.1994). In addressing questions of strict enforcement of discovery rules, reviewing courts "must remember that courts 'exist primarily to afford a forum to settle litigable matters between disputing parties,'" *Id.* at 751–52 (citing *Mizar v. Jones*, 157 Colo. 535, 537, 403 P.2d 767, 768 (1965)), and that, unless enforcement of procedural requirements is essential to shield substantive rights, litigation should be determined on the merits and not on formulistic application of the rules. *See People v. Dickinson*, 197 Colo. 338, 340, 592 P.2d 807, 808 (1979).

█ When a trial court strikes a party's answer, the allegations in the complaint are deemed admitted. *See Lee v. Colo. Dep't of Health*, 718 P.2d 221, 225 n. 4 (Colo.1986). Thus, the order striking Baldwin and Black & Decker's answer and affirmative defenses precludes Defendant–Petitioners from contesting any of the substantive issues alleged in the complaint. Baldwin and Black & Decker will be unable to contest the issues of liability, willful non-payment of wages, and Black & Decker's status as an alleged joint employer.[3] Additionally, Baldwin and Black & Decker will be unable to advance any affirmative defenses. These consequences are tantamount to an entry of default judgment.

█ A trial court's entry of default judgment constitutes an admission by the defendant of the material allegations contained in the complaint, and the only remaining issue to be determined is the amount of damages. Once the trial court has determined the amount of damages, judgment is entered which, "as a general rule, has the same effect as final judgment after a formal trial." *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 185 (Colo.2004).

Pinkstaff and the trial court argue that striking the answer is a "moderate" sanction not equal to default because Baldwin and Black & Decker may still contest the issue of damages. However, notwithstanding entry of default judgment, the issue of damages may be contested. *Kwik Way Stores*, 745 P.2d at 678 ("When a trial court determines that entry of default judgment is the appropriate sanction, the default establishes liability, ... but does not fix the amount of damages."). Had the trial court entered default judgment in favor of Pinkstaff, Defendant–Petitioners would be in the same position regarding their ability to litigate the case as they are in today—that is, the only issue they may contest is the amount of damages.

█ Accordingly, even though the trial court imposed the sanction of striking the answer instead of entry of default judgment, it had the same effect. Therefore, because we hold that a trial court order striking an answer is tantamount to an entry of default judgment, we must determine whether default was a proper sanction under the circumstances of the present case.

█ The "harshest of all sanctions is dismissal or entry of a default judgment, which should be imposed only in extreme circumstances." *Nagy*, 762 P.2d at 161, *see also Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 571 (Colo.2009) (dismissal for discovery violations is a drastic remedy, only to be applied in extreme circumstances). In *Cornelius*, we stated that sanctions should serve to facilitate discovery and cure discovery problems; however, when faced with extensive nondisclosure and a wholesale failure to prosecute a case, a trial court does not abuse its discretion in dismissing the action. *Id.* (water court does not abuse its discretion in dismissing with preju-

---

3. Defendant–Petitioners argue that, because "Ms. Pinkstaff has provided no authority suggesting that" Black & Decker employed Ms. Pinkstaff, "it is questionable whether any judgment against Black & Decker can stand, even if entered by default." However, this is an issue of fact not before this court, and we therefore decline to discuss Black & Decker's potential liability in this matter.

dice applicant's pro se application for adjudication of water rights due to applicant's complete failure to comply with C.R.C.P. 26, respond to requests for information, or adequately supplement his initial applications).

Here, discovery violations occurred and the imposition of sanctions was warranted. However, we find that the sanction imposed by the trial court was not commensurate with the culpability of Baldwin and Black & Decker.

While the trial court found that Defendant–Petitioners' actions amounted to an effective "failure to meaningfully participate in discovery," we hold that, while Defendant–Petitioners failed to comply with discovery requirements and trial court orders, the record does not support the conclusion that their behavior amounted to an abdication of their duties under the Colorado Rules of Civil Procedure justifying default judgment. *C.f. id.* (dismissal proper remedy when there has been "wholesale failure to comply with disclosure requirements for over one year").

Here, Baldwin and Black & Decker made some required C.R.C.P. 26 disclosures and requested that the trial court provide guidance as to what additional information must be disclosed. Neither the trial court nor Pinkstaff provided this guidance. Baldwin and Black & Decker eventually provided all of the specific documents the trial court ordered disclosed, and all of the court ordered depositions occurred, although representatives of Baldwin and Black & Decker were not deposed until after the court ordered deadline of September 30.[4]

Although Defendant–Petitioners committed some discovery violations and attempted to stonewall many of Pinkstaff's requests, striking the answer was an unwarranted sanction in the present case. C.R.C.P. 37 endorses a number of sanctions, ranging from monetary sanctions and orders prohibiting a disobedient party from entering certain documents or items into evidence, to orders

deeming non-disclosed information admitted. Here, the court had a variety of sanctions available which are less drastic than striking the answer. However, the first sanction the court turned to, other than instructing the parties regarding professionalism and proper discovery practices, was the drastic sanction of striking the answer.

Had the trial court made specific findings regarding what Defendant–Petitioners failed to disclose or how they had otherwise failed to comply with its orders, the court may have been better postured to craft sanctions tailored to the exact violation or to achieve disclosure. However, despite the range of sanctions available, the trial court did not adequately address why less drastic measures, such as sanctions barring the admission of certain evidence or monetary sanctions, would have been inappropriate in the present case.

Regarding monetary sanctions, the trial court dismissed the idea, concluding that such sanctions would have no deterrent effect because Baldwin and Black & Decker are "multi-million dollar companies." However, because the trial court had not tried sanctioning Defendant–Petitioners monetarily, its conclusion that such sanctions would be ineffective was speculative. The simple fact that a party to a lawsuit has what a court estimates to be great financial resources does not necessarily imply that monetary sanctions will have no deterrent effect.

Accordingly, while we acknowledge that discovery violations occurred, the sanction of striking the answer effectively denies Baldwin and Black & Decker the opportunity to litigate the merits of the dispute. The violations alleged here go beyond mere violation of "technical rules"; *cf. Dickinson,* 197 Colo. at 340, 592 P.2d at 808, however, denying Defendant–Petitioners their day in court is not the "least severe sanction" commensurate with either the prejudice caused to Plaintiff–Respondent or the culpability of Defendant–Petitioners. *See Lee,* 18 P.3d at 197. We

4. The trial court's September 10 order required Baldwin and Black & Decker to produce the organizational charts at least four days before the depositions. Pinkstaff initially noticed the depositions for September 18. However, the depositions were rescheduled for October 14 and

28. Pinkstaff argues that, because the first deposition was initially noticed on September 14, the documents were due by September 12. However, Baldwin and Black & Decker produced the charts on October 7, 9, 13, and 14—more than four days before the depositions occurred.

therefore hold that the trial court abused its discretion in striking the answer.

Finally, while we acknowledge that it is contested whether Baldwin and Black & Decker themselves are to blame for some of the violations, we note that the sanction imposed by the trial court to some extent punishes the parties for the attorneys' misconduct. The trial court based its order striking the answer, in part, on counsel for Defendant–Petitioners' lack of cooperation in scheduling depositions, failure to contact fact witnesses to obtain available dates for depositions, late disclosure of large amounts of discoverable information, "passive aggressive" demeanor, advancement of "disingenuous and intellectually dishonest" arguments, and employment of "abusive and unprofessional" discovery tactics. In imposing the sanction of striking Baldwin and Black & Decker's answer, the trial court denied Baldwin and Black & Decker their day in court based on misconduct perpetrated by their attorney. When imposing sanctions for discovery violations, trial courts must endeavor to impose sanctions that are commensurate with the harm done while not unduly punishing parties for their attorney's misconduct.

### B. Contempt

■ The trial court's December 19, 2008 order states the "flagrant violations of the Court's Order and Rules" committed by Gutierrez "merits a finding that Defendants' counsel [is] also in contempt of Court." Baldwin and Black & Decker believe that, by including this language in the order, the trial court held Gutierrez in contempt of court pursuant to C.R.C.P. 107. They argue this holding violated Gutierrez's due process rights because he was not afforded adequate procedural safeguards. In its response to our rule to show cause, the trial court states that it did not hold Gutierrez in contempt of court; rather, the language relating to contempt in the December 19 order merely stated that contempt, while not imposed, was warranted.

Although there is record support for the position that the trial court held Gutierrez in contempt, we take the trial court at its word that it did not find Gutierrez in contempt of court. The trial court's assertion that it did not find Gutierrez in contempt is also supported by the lack of procedural safeguards provided by the trial court to Gutierrez. Under C.R.C.P. 107(c), when contempt occurs outside the presence of the court (indirect contempt), the court must conduct contempt proceedings allowing the charged party a hearing, the opportunity to be represented by counsel, and the right to call and confront witnesses. *See Losavio v. Dist. Court*, 182 Colo. 180, 185, 512 P.2d 266, 268 (1973). The trial court held no such hearing, and did not impose any sanctions on Gutierrez for the "contempt."

While the contempt language employed by the trial court may be read to hold Gutierrez in contempt, we find that Gutierrez was not held in contempt of court because the trial court states it was not its intent to hold Gutierrez in contempt, it did not conduct contempt proceedings, and no sanctions were imposed. Therefore, we do not reach Defendant–Petitioner's due process claims.

### IV. Conclusion

Accordingly, we make our rule absolute, reverse the trial court's order striking the answer, and remand this case to the trial court for further proceedings consistent with this opinion.

Chief Justice MULLARKEY dissents, and Justice BENDER joins in the dissent.

Justice HOBBS does not participate.

Chief Justice MULLARKEY, dissenting.

I respectfully dissent. I would uphold the sanction striking the Defendant–Petitioners' answer as justified under the facts and circumstances of this case. Accordingly, I would discharge the rule to show cause.

As the majority correctly states, maj. op. at 702, sanctions under C.R.C.P. 37 "should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party." *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo.1987). Importantly, the trial court has discretion to impose sanctions under C.R.C.P. 37. *Id.* at 677. A ruling by the

trial court in an area where it has discretionary power will not be disturbed on review, unless it is clearly shown that there was an abuse of such discretionary power. *Colo. Nat'l Bank of Denver v. Friedman,* 846 P.2d 159, 166–67 (Colo.1993). In this case, the trial court's determination to strike the Defendant–Petitioners' answer was not manifestly arbitrary, unreasonable or unfair and should therefore not be overturned by this court.

Marcia Pinkstaff brought suit under the Wage Claim Act, §§ 8–4–101 through –123, C.R.S. (2008), against Black & Decker (U.S.) Inc. and Baldwin Hardware Corporation, seeking compensation for a bonus she allegedly earned in 2006 plus penalties and interest.[5] Pinkstaff was an account executive who was paid a base salary and earned a bonus if her sales exceeded a set quota. The majority estimates the claimed compensation at $23,000. Maj. op. at 700.

In their answer, Defendant–Petitioners admitted that Pinkstaff was employed by Baldwin during the relevant time period, her employment terms included the bonus plan at issue, and they paid Pinkstaff a bonus of $9,536 during 2006. Defendant–Petitioners denied that Pinkstaff was employed by Black & Decker and denied they owed her any additional compensation under the terms of the bonus plan. They also asserted various affirmative defenses. Based on the amended complaint and the amended answer, there were two issues at stake: whether Pinkstaff was entitled to any additional compensation for 2006 and whether Black & Decker was properly named as a defendant. Discovery disputes broke out between the parties over Pinkstaff's requests for discovery related to both contested issues.

The case was heard by two judges. The first is a sitting member of the Denver District Court. The second is a senior judge who provided assistance after the first judge became ill. It is evident from the record before us that the judges tried various methods to resolve the discovery dispute, eventually coming to the conclusion that lesser sanctions would be ineffective in this case. The record also discloses that the court became impatient with counsel and sometimes used intemperate language that I do not approve. However, I support the decision to impose the sanction because it was only reached after a long discovery process involving multiple status conferences and pleas from the judges that the Defendant–Petitioners comply with the court's orders.

Pinkstaff submitted her initial disclosures pursuant to C.R.C.P. 26(a) on April 29, 2008. Defendants submitted initial and amended disclosures listing seventeen people with knowledge of discoverable information. Pinkstaff then submitted a Motion for Disputed Modified Case Management Order asserting that Defendant–Petitioners refused to conduct informal discovery or to allow her counsel to interview any of the seventeen people. Accordingly, Pinkstaff asked the court to permit her to depose all seventeen individuals, a request the judge rejected as unacceptable at a case management conference on August 1, 2008. At that conference, the judge expressed frustration with both counsel and ordered Defendant–Petitioners to provide information concerning Baldwin's relationship to Black & Decker as well as its financial status. After much discussion and in an attempt to avoid imposing sanctions on the parties, the court urged Defendant–Petitioners' attorney to "comply with the letter and spirit of his professional responsibilities."

On August 6, Pinkstaff alleged continuing discovery violations claiming Defendant–Petitioners failed to provide adequate disclosures, including documents relating to the bonus plan, thereby inhibiting her ability to depose Baldwin's representative. Defendant–Petitioners responded, admitting some errors in disclosure but denying other allegations, particularly the assertion that Pinkstaff should be allowed discovery from Black & Decker. On September 10, the court held a hearing to resolve the discovery disputes and granted Pinkstaff the right to take a new

---

5. The Wage Claim Act expressly covers a bonus as a form of wages or compensation. § 8–4–101(8)(a)(II), C.R.S. (2008). The Act requires prompt payment of all wages or compensation.

*See* § 8–4–103, C.R.S. (2008). The employer may be subject to penalties if it fails to timely pay after receiving a written demand from the employee. § 8–4–109(3), C.R.S. (2008).

deposition of Baldwin, to be concluded by the end of September. Although the judge expressed concern that Black & Decker was not a proper party to the case, he found that Pinkstaff was entitled to discover information regarding Black & Decker's role in the case. Representatives of Baldwin and Black & Decker were ordered to appear at every further hearing in order to help resolve some of the ongoing problems. Finally, the court issued a written order providing discovery requirements moving forward, including a deposition of a fully informed Black & Decker representative and organizational charts of Black & Decker and Baldwin four days prior to the depositions.

Additional discovery disputes continued, however. On September 16, Pinkstaff filed a Motion to Enforce the court's September 10 order, alleging that Defendant–Petitioners had failed to comply with the requirements set forth therein. Soon after, the judge expressed his belief that Defendant–Petitioners were resisting discovery by all possible means without regard to costs and pushing the ethical and professional envelope. Moreover, the court added that while it did not agree with Pinkstaff's counsel's strategic decisions, she was proceeding with the case in a way that she was entitled to and Defendant–Petitioners' counsel was not. Nevertheless, discovery disputes continued into October and November, 2008.

A senior judge was assigned to assist the first judge after he became ill. On December 19, the second judge granted Pinkstaff's Motion for Sanctions, finding that "Defendants have had ample time to fully respond to discovery, and have failed to do so." The second judge also entered the Order that is the subject of this proceeding, in which Defendant–Petitioners' Answers and Affirmative Defenses were stricken and Defendant–Petitioners were ordered to pay attorney's fees and costs. Although the December 19 Order adopted much of the proposed order submitted by Pinkstaff on September 16, it also discussed the ongoing discovery disputes that occurred throughout October and November. In general, the December 19 Order found that although Defendant–Petitioners had been repeatedly warned to cooperate with the court in order to move the case forward, they had willfully disobeyed two court orders and continued with unacceptable conduct despite the warnings.

Overall, the trial court in the person of two different judges tried a number of measures over an extended period of time to resolve the discovery disputes. They held frequent status conferences to address particular discovery issues. They lectured the lawyers about the acrimony that had arisen between them and reminded the lawyers of their professional obligations. They ordered the clients to appear with their attorneys at court hearings. None of these methods seemed to work. Although the majority finds that the sanction imposed was "not commensurate with the culpability of Baldwin and Black & Decker," maj. op. at 703, it appears there were few, if any, options remaining for the court to pursue in order to facilitate discovery. As the trial court stated at the December 19 hearing, notwithstanding the court's previous efforts to obtain compliance, Defendant–Petitioners had "effectively failed to meaningfully participate in discovery since this action was filed." It is clear from the record that the judges came to the conclusion that in light of all the circumstances, striking the answer was the only way to resolve the procedural impasse. In fact, the December 19 Order specifically noted that under the circumstances, the less drastic option of a monetary sanction would be ineffective due to the David and Goliath disparity between the resources of the parties. In my view, therefore, the trial court's discretionary decision to strike Defendant–Petitioners' answer was not manifestly arbitrary, unreasonable or unfair.

My conclusion is bolstered by the underlying nature of the case and the absence of a real divide between liability and damages. Although the majority's conclusion that striking Defendant–Petitioners' answer was tantamount to entry of a default judgment appears correct, maj. op. at 702, it does not automatically follow that the entering of a default judgment is as harsh a sanction in this case as it sometimes may be. Admitting the complaint in its entirety and striking the answer is not a "death sentence" for Defendant–Petitioners. This is because De-

fendant–Petitioners admitted that Pinkstaff was an employee of Baldwin during the relevant time and that the bonus plan under consideration exists. Therefore, there were really only two main issues actually in contention: whether Black & Decker was a proper party and how much money, if any, Defendant–Petitioners owed Pinkstaff under the bonus plan. Striking the answer eliminates Defendant–Petitioners' ability to contend that Black & Decker is not a proper party, but the trial court specifically held that Defendant–Petitioners are still allowed to present evidence to rebut Pinkstaff's claims for damages under the Wage Claim Act. While it seems Defendant–Petitioners can no longer assert they owe Pinkstaff no damages, they are free to present evidence showing they owe her anywhere from a nominal amount to the full amount Pinkstaff's claims. Therefore, striking the answer in this case, while certainly a weighty sanction, still allows Defendant–Petitioners to present arguments concerning the main issue being litigated. Because Defendant–Petitioners can still present evidence to rebut Pinkstaff's claim that they owe her additional wages, the sanctions effectively move the trial along to the substantive question at issue, what damages are owed to Pinkstaff for improper calculation of her bonus under the bonus plan.

In my opinion, therefore, striking the answer in this case was not as harsh a sanction as it may appear at first glance. The judges did not choose sides throughout the various discovery disputes and were evenhanded in their attempts to overcome the procedural impediments stalling the case. They imposed this sanction only as a last resort when other means had failed and, after dealing with both parties for over nine months, they determined that Defendant–Petitioners were the party at fault for the continuing discovery problems. This was not an abuse of discretion, and the trial court's order should be upheld. Therefore, I respectfully dissent.

I am authorized to state Justice BENDER joins in this dissent.