23CA1531 Parental Resp Conc JLC 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1531
Arapahoe County District Court No. 22DR30621
Honorable Cynthia Mares, Judge

---

In re the Parental Responsibilities Concerning J.L.C. and A.M.C., Children,

and Concerning Jennifer Fischer,

Appellee,

and

Derrick Christianson,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Yun and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

Hampton & Pigott LLP, David J. Pigott, Natalie T. Chase, Broomfield, Colorado, for Appellee

Cox Baker Page & Bailey, LLC, Darius T. Carter, Lone Tree, Colorado, for Appellant

¶ 1     Derrick Christianson (father) appeals the district court's judgment that allocated parental responsibilities concerning his two children and determined child support. We affirm the judgment in part, reverse it in part, and remand the case for further proceedings.

## I. Background

¶ 2     The case began in May 2022, when Jennifer Fischer (mother) filed a petition for dissolution of marriage, later converted into a petition to allocate parental responsibilities. In the months leading up to the permanent orders hearing, mother repeatedly asserted that father had not provided complete financial disclosures or responded to her discovery requests. The court issued orders directing father to comply with mother's requests.

¶ 3     At the permanent orders hearing in April 2023, mother reported that father still had not given her any information about his real estate transactions and had not responded to her pattern interrogatories concerning the allocation of parental responsibilities. Mother informed the court that through her own research, she had discovered that father was involved in at least fourteen real estate listings since 2019. Though father disputed the accuracy of this

1

information, he acknowledged that he had not disclosed any information concerning his real estate transactions. He also told the court that, as for the allocation of parental responsibilities, it was clear throughout the case that he wanted equal parenting time.

¶ 4 The court sanctioned father by precluding him from eliciting or opposing any evidence concerning his real estate transactions. It also limited his introduction of evidence related to the unanswered interrogatories and awarded mother attorney fees. Then, after denying father's request to continue, the court proceeded with the hearing, during which both parties presented multiple witnesses.

¶ 5 In its permanent orders, the court allocated the majority of parenting time to mother, and it ordered father to pay $1,447 per month in child support. In calculating child support, the court determined that father's total income was $8,652 per month, finding that he received $3,171 per month from his employer, Rhino, Colorado, LLC; an average of $3,769 per month from real estate transactions; and $1,712 per month from a trust.

## II. The Disclosure and Discovery Sanctions

¶ 6 Father contends that the district court reversibly erred by imposing severe and disproportionate sanctions for his failure to comply with his disclosure and discovery obligations. We disagree.

### A. Preservation

¶ 7 As an initial matter, mother argues that father did not preserve his arguments for appellate review. *See In re Marriage of Mack*, 2022 CO 17, ¶ 12 (noting that an issue not raised in the district court generally will not be addressed for the first time on appeal). She argues that a party must contemporaneously object to an alleged error and that after the court sanctioned father, he did not object to its ruling. *See Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo. 2009). But father was not required to object *after* the court ruled. *See In re Marriage of Stradtmann*, 2021 COA 145, ¶ 10. He contested mother's motion to compel and objected to her requests for sanctions. That was sufficient to preserve the matter for our review. *See In re Marriage of Martin*, 2021 COA 101, ¶ 13 (noting that all that is required to preserve an issue for appeal is that the issue be brought to the district court's attention and that the court has an opportunity to rule on it).

3

## B. Governing Legal Standards

¶ 8    In domestic relations cases, the parties "owe each other and the court a duty of full and honest disclosure of all facts that materially affect their rights and interests and those of the children involved in the case." C.R.C.P. 16.2(e)(1). To that end, the parties must affirmatively disclose all information material to the resolution of the case, and they are under a continuing duty to supplement or amend that information, including responding to discovery requests. C.R.C.P. 16.2(e)(1)-(2), (e)(4); *see also* C.R.C.P. 16.2(f)(3) (permitting additional discovery).

¶ 9    If a party does not comply with the provisions of C.R.C.P. 16.2, the other party may seek an order compelling the noncomplying party's disclosure or discovery response and request sanctions. *See* C.R.C.P. 16.2(e)(5), (j); C.R.C.P. 37(a)(2)(A). Sanctions may include preventing the noncomplying party from introducing evidence, prohibiting them from contesting a designated claim or defense, entering a default judgment, or ordering them to pay attorney fees. *See* C.R.C.P. 37(b)(2)(A)-(C), (c)(1); *see also* C.R.C.P. 16.2(e)(5), (j).

¶ 10    The court has considerable discretion to impose appropriate sanctions based on the circumstances. *In re Marriage of Wright,*

4

2020 COA 11, ¶ 27. We may not disturb the court's decision absent a showing that it abused its discretion, meaning that the decision was manifestly arbitrary, unreasonable, or unfair, or a misapplication of the law. *See Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009); *Wright*, ¶ 29.

## C.    Discussion

¶ 11    Father focuses on the court's evidentiary restrictions concerning his real estate transactions and argues that the court's sanction was too severe. However, throughout the proceeding, mother asserted that father was involved with selling real estate, individually and with his father, and she repeatedly requested information from him concerning these transactions. After father failed to provide this financial information for many months, mother sought relief from the court, and it gave him "one last opportunity to comply." But at the hearing, father acknowledged that he had not provided any information to mother concerning income derived from real estate transactions. And he offered no meaningful explanation for his noncompliance, stating only that he could not comply with the amount and volume of the information requested by mother, that many of his transactions involved a third party, and

that his other financial disclosures could reveal the income he earned from real estate transactions. Mother countered that without the information from father, she was forced to conduct her own investigation and that she could only make assumptions about how much money he had received from his multiple real estate transactions.

¶ 12    Father's real estate transactions were relevant to his financial circumstances and material to the resolution of the case. *See* § 14-10-115(2)(b)(V), C.R.S. 2024. Father admittedly refused to disclose this information, and the court found mother's claims about his noncompliance credible. Under such circumstances, the court acted within its discretion to restrict father's introduction of and opposition to the undisclosed evidence. *See* C.R.C.P. 16.2(e)(5), (j); C.R.C.P. 37(b)(2)(B), (c)(1). And contrary to father's assertions, the court's ruling did not unreasonably deny him his day in court. Nor was it disproportional to his noncompliance. *See Pinkstaff*, 211 P.3d at 702 (stating that sanctions should be proportional to the culpability of the disobedient party). The court narrowly tailored its sanction to father's disobedient conduct — his lack of disclosure on real estate transactions. He was still permitted to elicit and oppose

6

evidence concerning his other financial circumstances, and he did so at the hearing.

¶ 13    To the extent father also suggests that the court infringed on his right to cross-examine adverse witnesses, we disagree.  The court reasonably limited its restriction on cross-examination to father's undisclosed real estate income.  *See In re Smith*, 989 P.2d 165, 173-74 (Colo. 1999) (concluding that a hearing board did not abuse its discretion by limiting a party's ability to cross-examine witnesses as a sanction for his failure to comply with his discovery obligations); *see also Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 42 (recognizing that a court may place reasonable limits on a party's cross-examination).

¶ 14    Father generally asserts that his evidence concerning "the allocation of parental responsibilities was likewise severely limited or precluded by the [c]ourt."  But the court only limited testimony related to the interrogatories he failed to answer.  The court allowed him to introduce other evidence concerning the allocation of parental responsibilities and the children's best interests.  Other than his general assertion, father develops no legal or factual argument to explain why the court's limited sanction prejudiced his

7

ability to present his position such that reversal is warranted. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29 (declining to address undeveloped argument).

¶ 15    The court thus acted within its broad discretion to impose sanctions proportional to father's failure to comply with his disclosure and discovery obligations. *See Pinkstaff*, 211 P.3d at 702; *Wright*, ¶ 29.

### III.    Father's Motion to Continue

¶ 16    Father contends that the district court erred by denying his motion to continue based on the connectivity issues at the hearing. Contrary to mother's assertion, father did not need to object to the court's ruling to preserve this issue for appeal. *See Stradtmann*, ¶ 10; *Martin*, ¶ 13. We thus consider but reject father's argument.

### A.    Additional Facts

¶ 17    During preliminary discussions at the permanent orders hearing, which was conducted via the Webex remote videoconference platform, father's attorney reported that his connection was "very spotty." The court noted the issue and directed father's attorney to connect via telephone. After father's attorney called in, he moved to continue the hearing.

8

¶ 18    The court denied his request.  It found that the case had been
pending for almost a year and that there was no reason for the case
to still be pending.  The court then conducted the hearing, and both
parties and their attorneys were able to participate.

## B.    Governing Legal Standards

¶ 19    Continuances shall be granted only for good cause.  C.R.C.P.
121, § 1-11.  The burden is on the moving party to show good cause
for a continuance.  *See In re Marriage of Lorenzo*, 721 P.2d 155, 156
(Colo. App. 1986).  We will not disturb a court's ruling on a motion
to continue absent a showing that the court abused its discretion.
*People in Interest of E.B.*, 2022 CO 55, ¶ 14.

## C.    Discussion

¶ 20    Father disagrees with the court's decision to proceed with the
hearing, arguing that his attorney's connection issues significantly
impaired his representation.  However, the record reveals that
despite the complications he experienced, his attorney was capable
of fully participating.  Indeed, during the hearing, father's attorney
cross-examined mother's witnesses, presented witnesses in support
of father's positions, and gave a closing argument.  And father does
not identify any evidence or argument that his attorney was unable

to present because of the connection issues. *See In Interest of Spohr*, 2019 COA 171, ¶ 32 (noting that to obtain reversal, the moving party must show that the denial of the continuance resulted in actual prejudice).

¶ 21 Nor do we agree with father that the connection issues experienced by others at the hearing or the numerous "indiscernible" notations in the transcript undercuts the court's ruling or hinders our appellate review. Even though there were some additional audio issues, the record does not indicate that those issues significantly interfered with the presentation of evidence or impeded the completion of the hearing. *See id.*

¶ 22 The court considered the circumstances, and it determined, with record support, that father had not shown good cause to justify a continuance and that further delaying a decision on the allocation of parental responsibilities would not serve the children's best interests. We therefore are not persuaded that the court abused its discretion by denying father's request to continue the hearing. *See Cherry Creek Sch. Dist. No. 5 v. Voelker*, 859 P.2d 805, 809 (Colo. 1993) (stating that a court considering a motion to continue considers the circumstances of the particular case and

weighs the right of the party requesting the continuance to a fair hearing against the prejudice that may result from the delay); *see also E.B.*, ¶ 14.

## IV. Father's Gross Income

¶ 23  Father also contends that the district court erred by finding that his gross income was $8,652 per month for purposes of fixing his child support obligation. We again reject mother's argument that father did not sufficiently preserve this issue. *See Stradtmann*, ¶ 10; *Martin*, ¶ 13. Following our review, we conclude that because the court's findings are inconsistent in one respect, we must remand for further findings.

### A. Additional Facts

¶ 24  During the case, father reported that he started a new job working at Rhino, where he built stages and converted playing surfaces for professional sports teams. He asserted that he did not have a set work schedule and did not have the opportunity to work full time. Father's paystubs showed that he earned between $31 and $36 per hour and that, on average, he did not work more than twenty hours per week. He later reported earning $75 per hour, but, at the hearing, he said that was incorrect.

¶ 25    Mother argued that the court should impute full-time income to father for his work at Rhino, which she reported would be about $6,342 per month (about $36 per hour) or could be as much as $13,000 per month ($75 per hour). She also argued that father earned an average of $3,769.50 per month from his real estate transactions, and another $1,712 per month from his trust, resulting in total gross income of about $11,824 per month.

¶ 26    In the oral ruling, the court said that, due to the limited information disclosed by father, it was "very difficult to determine" his actual income and that "the most difficult part was determining" his income from Rhino. The court then found that father's "income [was] an average of [$]3,769 from real estate income, . . . [$]1,712 in trust income, . . . [and] $3,171" from Rhino "for a total of $8,652 per month." In support of its findings, the court noted that "full-time work at Rhino . . . would be . . . $6,342 per month," but it said that "based on . . . the evidence provided," it had determined that father's total income was $8,652 per month.

¶ 27    In the written order, which was drafted by mother's attorney and adopted nearly verbatim by the court, the court said that "[f]ather's historical income includes real estate transactions, full

12

time work at Rhino ($3,171.00), average real estate transactions ($3,769.50), and trust income in the amount of $1,712 for a total of $8,652.00 per month." Based on that income, the court determined that father's child support obligation was $1,447 per month.

### B.    Standard of Review

¶ 28    We review a court's child support determination for an abuse of discretion. *In re Marriage of Tooker*, 2019 COA 83, ¶ 12. When reviewing child support, the court's income finding is typically a question of fact that we defer to if supported by the record. *In re Marriage of Collins*, 2023 COA 116M, ¶ 30. However, "[t]he district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order." *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.

### C.    Income from Rhino

¶ 29    Father argues that the court imputed to him $3,171 per month as his full-time potential income from Rhino and that the court's findings were insufficient to support that imputation. We mostly disagree, but we conclude that a remand is necessary to resolve a discrepancy between the court's oral ruling and its written order.

¶ 30     To calculate child support, a court determines a party's actual gross income, which includes the wages from their employment. § 14-10-115(1)(b)(I), (3)(c), (5)(a)(I)(B), (7).  But if a party is unemployed or underemployed, the court may determine child support based on potential income, which is an income commensurate with the party's demonstrated earning ability.  § 14-10-115(5)(b)(I); *Collins*, ¶ 29.  When imputing potential income, the court must find that the party's unemployment or underemployment is voluntary, meaning that the party is shirking their financial obligation "by unreasonably foregoing higher paying employment that [they] could obtain."  *People v. Martinez*, 70 P.3d 474, 476 (Colo. 2003).  It also "must make specific findings to inform an appellate court of the basis of its income imputation order."  *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 31.

¶ 31     In its detailed oral ruling, the court did not say that it was imputing income to father.  Rather, the court indicated that it was trying to determine father's *actual* income, a difficult endeavor due to father's noncompliance with his discovery obligations.  The court noted that father's "trust income wasn't disclosed until later," and his "real estate income had to be determined based on information

14

[m]other's counsel provided."  The court found that father's earnings from Rhino were the "most difficult" source of income to determine.  Mother asked the court to impute $6,342 per month as father's full-time potential income from Rhino.  Instead, "based on the evidence presented," which included testimony and documentary evidence that father worked only part-time at Rhino, the court found his actual income from Rhino to be exactly half that amount — $3,171 per month.  But in its written order, the court said that father's income included $3,171 per month for his "full time work at Rhino."  The court did not explain the basis for this determination.

¶ 32    We are unable to reconcile the court's inconsistent findings concerning father's income from Rhino.  The oral ruling suggested that the court found that father's actual income from part-time employment was $3,171 per month.  However, the written order suggested that the court imputed potential income to father based on full-time employment.  To be sure, a court is free to modify an oral ruling in its written order.  *See Collins*, ¶ 11.  But when a court adopts a party's proposed order nearly verbatim, we will scrutinize the ruling more critically than if the court had independently

produced the order. *See Fontanari v. Snowcap Coal Co.*, 2023 COA 29, ¶ 23.

¶ 33    The written order (proposed by mother's attorney and adopted by the court), offered no explanation as to why $3,171 per month represented father's full-time employment at Rhino, when the court previously found in its oral ruling that father's "full-time work at Rhino" would be "$6,342 per month" and declined to attribute that amount of income to father. Nor did the court make a finding in its oral or written rulings that father was shirking his child support obligation by unreasonably foregoing higher paying employment. Such a finding was necessary if the court was imputing full-time potential income to father. *See* § 14-10-115(5)(b)(I); *Martinez*, 70 P.3d at 476 ("If the trial courts do not find that the parent is shirking his or her child support obligation . . . , they should calculate the amount of child support starting from actual gross income only."). Additionally, $3,171 per month would equate to about twenty hours per week at $36 per hour, which more closely resembles father's income from part-time employment, not an imputation of full-time potential income.

¶ 34    Under the circumstances, it is somewhat unclear whether the

court's finding of $3,171 per month from Rhino was an imputation

of father's potential full-time income or his actual income from part-

time employment, and the court simply made a clerical error when

it referred to "full time work" in its written order.[1]  We cannot

simply conclude that the oral ruling expresses the court's intent

because, as a general matter, "a written order controls over a

conflicting oral ruling."  *People in Interest of S.R.N.J-S.*, 2020 COA

12, ¶ 16.

¶ 35    We therefore reverse the child support determination and

remand the case for additional findings or clarification by the

district court regarding father's income from Rhino.  *See Gibbs*, ¶ 9.

On remand, the court may rely on the evidence and its other

findings from the permanent orders hearing.  *See In re Marriage of*

---

[1] It is possible that this discrepancy is attributable to a simple oversight by mother's counsel.  Mother's portion of the joint trial management certificate included a requested finding that "[f]ather's historical income includes . . . full time work at Rhino ($6342.27)." This language was included in the proposed order mother's counsel submitted to the court after the hearing, with only the dollar amount changed.  Thus, the final order included a finding that "[f]ather's historical income includes . . . full time work at Rhino ($3,171)."  Nonetheless, the ambiguity still exists in the court's final order, and we cannot reconcile it on this record.

*Corak*, 2014 COA 147, ¶ 21 ("On remand, '[i]t is within the trial court's discretion to receive additional evidence or . . . to rely . . . on the record of [the] previous evidentiary hearing.'" (quoting *In re Marriage of Lee*, 781 P.2d 102, 104 (Colo. App. 1989))). The court's findings must be sufficient to provide a clear understanding of the basis of its ruling and clarify whether father's actual income included $3,171 per month for his part-time employment at Rhino or whether it imputed to father full-time potential income. *See Capparelli*, ¶ 31; *Gibbs*, ¶ 9. Based on those findings, the court must determine the appropriate amount of child support in accordance with section 14-10-115.

### D. Income from Real Estate Transactions

¶ 36 Father also contends that the court improperly included income from his real estate transactions. He says that, given the court's reference to full-time work at Rhino, the real estate income was generated by secondary employment and that, under the child support statute, such income is excluded from a party's gross income. *See* § 14-10-115(5)(a)(II)(C) (directing that a party's gross income does not include the income a party receives "from additional jobs that result in the employment of more than forty

18

hours per week or more than what would otherwise be considered to be full-time employment"). However, this issue may be resolved on remand by the court's clarification of its order. We therefore decline to address it, other than to note that to the extent this arises, the court must adhere to section 14-10-115(5)(a)(II)(C).

## V. Appellate Attorney Fees

¶ 37    Mother requests an award of attorney fees on appeal, asserting that because the district court awarded her attorney fees, "if this [c]ourt affirms, she is entitled to fees on appeal." Alternatively, she contends that father's appeal is vexatious and frivolous. *See* § 13-17-102(4), C.R.S. 2024. Because mother does not explain the legal or factual basis for her request, *see* C.A.R. 39.1 ("If attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request, and explain the legal and factual basis, for an award of attorney fees."), and because we disagree with her assessment of father's appeal, we deny her request, *see Martin*, ¶ 42.

## VI. Disposition

¶ 38    The child support determination is reversed, and the case is remanded for further findings and clarification.  The judgment is otherwise affirmed.

JUDGE YUN and JUDGE KUHN concur.